IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 25, 2016 Session

**JAMES F. LOGAN, JR., ET AL. v.
THE ESTATE OF MILDRED CANNON ET AL.**

**Appeal from the Chancery Court for Bradley County
No. 2011-CV-48     Frank V. Williams, III, Chancellor[1]**

_____

**No. E2015-02254-COA-R3-CV-FILED-SEPTEMBER 23, 2016**

_____

This case involves a one-quarter ownership interest in an unimproved 7.18-acre tract of real property located in Bradley County, Tennessee ("the Property"). The plaintiff, attorney James F. Logan, Jr., asserts that he purchased a one-quarter interest in the Property from Sam and Mildred Cannon in 1974. Sam and Mildred Cannon were divorced in 1979, and Mr. Cannon remarried. Upon Mr. Cannon's death in 2002, he was survived by his second wife, Yvonne, and two adult children from his marriage to Mildred Cannon. Prior to commencement of this action, Yvonne Cannon conveyed any interest she had in the disputed property to Mr. Logan via quitclaim deed. Mr. Logan, together with co-plaintiffs, who are co-tenants of the Property not participating in this appeal, subsequently filed this action in February 2011, seeking declaration of ownership in Mr. Logan's name and clear title concerning his claimed one-quarter interest in the Property. They named as defendants Mildred Cannon; her daughter, both individually and in her capacity as trustee for Sam and Mildred Cannon's son; and a successor trustee. The plaintiffs acknowledged that no deed reflecting Sam and Mildred Cannon's purported conveyance to Mr. Logan had been recorded or could be produced. In the alternative, the plaintiffs pled adverse possession. Mildred Cannon died in September 2011, and her estate was substituted as a party in this action. The parties subsequently filed competing motions for summary judgment, with the defendants alleging that Mr. Logan's claim could not satisfy the requirements of the Statute of Frauds and the plaintiffs amending their complaint to add alternative equitable theories of constructive trust and/or resulting trust. Following hearings, the trial court granted summary judgment in favor of the defendants. Mr. Logan appeals. We affirm the trial court's findings that the evidence cannot satisfy the requirements of the Statute of Frauds or give rise to a constructive or resulting trust. We determine, however, that genuine issues of material fact exist regarding Mr. Logan's claim of adverse possession, and we remand for further proceedings concerning this claim. We also determine that the trial court improperly

---

[1] Sitting by interchange.

found statements in an affidavit presented by an employee of Mr. Logan's law firm to be inadmissible.  We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

James F. Logan, Jr., Cleveland, Tennessee, Pro Se.

Travis D. Henry, Cleveland, Tennessee, for the appellees, The Estate of Mildred Cannon by and through the Personal Representative, Janna Sullivan; Janna Cannon Sullivan, Individually; Janna Cannon Sullivan as Co-Trustee; and Comerica Bank, Successor Co-Trustee, per the Will of Sam Cannon.

**OPINION**

## I.  Factual and Procedural Background

The Property at issue is located at the intersection of Mouse Creek Valley Road and Lauderdale Highway in Bradley County.  Prior to the alleged April 1974 conveyance of a one-quarter interest in the Property ("Disputed Interest") from Sam and Mildred Cannon to Mr. Logan, the Property was owned in equal percentages by Mr. Cannon, James S. Thompson, Conrad Finnell, and C.W. Wright, Jr.  At the time, Mr. Thompson, Mr. Finnell, and Mr. Logan were all partners in the law firm now known as Logan-Thompson, PC.

The chain of title reflects that on October 6, 1967, a conveyance of the Property via warranty deed from H. L. Hughes, Jr., *et ux.*, in equal fourths to Mr. Cannon, Mr. Wright, and Joan W. Walker, with the remaining one-fourth divided equally between Mr. Thompson and Mr. Finnell, was recorded in the Bradley County Register's Office.  Through various recorded conveyances of portions of interest in the Property, by April 1972, the Property was jointly owned by Mr. Wright, Mr. Thompson, Mr. Finnell, and Mr. Cannon as tenants in common.  Mr. Cannon's interest was one-twelfth shy of a one-fourth interest in the Property.  On December 22, 1972, Mr. Thompson and Mr. Finnell conveyed to Mr. Cannon by warranty deed a one-twelfth interest in the Property.  However, this deed was not recorded until 1979 and, according to Mr. Thompson's affidavit, was believed lost.  On March 16, 1974, Mr. Thompson and Mr. Finnell again conveyed by warranty deed the same one-twelfth interest in the Property to Mr. Cannon.  This deed was recorded on March 21, 1974.  It is undisputed that the recorded chain of

2

title concerning the Disputed Interest ends with the 1979 recordation of the 1972 deed conveying to Mr. Cannon a one-twelfth interest in the Property.[2]

Mr. Logan's claim rests on his assertion that in April 1974, Mr. Cannon was having financial problems, offered to sell Mr. Logan the Disputed Interest, and accepted a check written by Mr. Logan in the amount of $6,400.00 as full payment. Mr. Logan acknowledges that the cancelled check has long since been lost or destroyed. Mr. Logan maintains that prior to purchasing the Disputed Interest, he confirmed with Mildred Cannon that she agreed to the sale. Mr. Logan testified through deposition that he believed Mr. Cannon was going to have Mr. Thompson draft a deed. According to Mr. Logan, he discovered there was no deed of record for his ownership of the Disputed Interest in 2006 or 2007 when he and other co-tenants were preparing to apply for permission to rezone the Property for development.

Meanwhile, Sam and Mildred Cannon were divorced in 1979. Two children, now adults, were born to the marriage: co-defendant Janna Cannon Sullivan and Phil Cannon. The divorce judgment and concomitant agreed property settlement, attached to pleadings in the record before us, provides for no distribution of the Disputed Interest. It is undisputed that upon Mr. Cannon's death in 2002, his estate was settled without reference to his purported interest in the Property.

On February 28, 2011, Mr. Logan, Mr. Thompson, and Jenny Rogers (collectively, "Plaintiffs") filed this action seeking declaratory judgment regarding ownership of the Disputed Interest and clear title in Mr. Logan's name to the Disputed Interest. Ms. Rogers is the daughter and successor in interest of Conrad Finnell, who had died on April 14, 2003. The plaintiffs named as defendants Mildred Cannon; Janna Cannon Sullivan, individually and as co-trustee of a trust for the benefit of Phil Cannon; and Comerica Bank, successor co-trustee pursuant to the will of Sam Cannon (collectively, "Defendants"). Mildred Cannon subsequently died during the pendency of this action on September 7, 2011. Thereafter, the Estate of Mildred Cannon, by and through Janna Cannon Sullivan as personal representative, was substituted for Mildred Cannon as co-defendant.[3]

Although Plaintiffs averred in their complaint that Mr. Logan's purported purchase of the Disputed Interest should be upheld, they also claimed in the alternative

---

[2] In a March 4, 2014 order entered by the trial court in this action, the court ratified the parties' announced agreement to declare the March 16, 1974 deed void as a duplicate, noting the parties' stipulation that the March 16, 1974 deed had been "executed to record the same conveyance as had been made in 1972 but had not been timely recorded."

[3] Although the substitution of the Estate is undisputed, we note that the record on appeal does not contain a suggestion of death or resultant order granting the substitution. *See* Tenn. R. Civ. P. 25.01.

that Mr. Logan had acquired the Disputed Interest via adverse possession. Plaintiffs sought to have the trial court (1) compel Defendants to execute a deed to replace the purportedly lost deed, (2) declare the purportedly lost deed valid, and (3) declare Mr. Logan the true owner of the Disputed Interest.

Defendants filed an answer on May 4, 2011, denying any knowledge of a conveyance of the Disputed Interest from Sam and Mildred Cannon to Mr. Logan and asserting, *inter alia*, the Statute of Frauds as an affirmative defense. *See* Tenn. Code Ann. § 29-2-101. On November 1, 2011, Defendants filed a motion for summary judgment, requesting dismissal of the complaint. In support, they attached a statement of material facts, a memorandum of law, a copy of Mr. Logan's response to the Defendants' first set of interrogatories, and a copy of Mr. Logan's deposition testimony. They subsequently filed affidavits completed respectively by Ms. Sullivan and the Bradley County Assessor of Property, who stated that Mr. Logan's name was not added to the tax assessment for the Property until 2009.

Plaintiffs subsequently filed their motion for summary judgment on June 22, 2012, asserting that Mr. Logan's 1974 purchase of the Disputed Interest was "undisputed" and that no genuine issue of material fact existed to prevent an award of summary judgment in favor of Plaintiffs. In support, they attached a statement of "undisputed" material facts and several affidavits attesting to Mr. Logan's purchase of the Disputed Interest, his payment of one-quarter of the property taxes on the Property since 1974, and/or his use of and control over the Property since April 1974. They also attached the affidavit of the Bradley County Trustee, who attested to tax records reflecting that Mr. Logan paid one-quarter of the property taxes related to the Property from 1996 through 2010. Plaintiffs subsequently filed a motion to amend the complaint to plead the equitable doctrines of constructive and/or resulting trust.

The trial court conducted a hearing on April 2, 2013. Finding that Plaintiffs had failed to satisfy the requirements of the Statute of Frauds or to prove that Mr. Logan's use of the Property constituted adverse possession, the court granted summary judgment in favor of Defendants and quieted title of the Disputed Interest in favor of Defendants. The court entered a final order to this effect on March 4, 2014, incorporating a memorandum opinion from the April 2, 2013 hearing. Mr. Logan timely appealed to this Court.

This Court remanded the case on March 24, 2014, however, requesting clarification concerning Mr. Logan's motion to amend his complaint and his claims of resulting trust and/or constructive trust. Following a hearing on remand, the trial court granted Mr. Logan's motion to amend his complaint but confirmed summary judgment in favor of Defendants, dismissing Mr. Logan's claims of resulting trust and constructive

trust. The trial court entered a final judgment to this effect on October 28, 2015. Mr. Logan timely appealed.

## II. Issues Presented

Mr. Logan presents four issues on appeal, which we have restated as follows:

1. Whether the trial court erred by declining to consider certain affidavit evidence upon finding that the evidence would be inadmissible at trial.

2. Whether the trial court erred by granting summary judgment in favor of Defendants upon finding that Mr. Logan's claim was barred by the Statute of Frauds.

3. Whether the trial court erred by declining to grant summary judgment in favor of Mr. Logan based on common law adverse possession.

4. Whether the trial court erred by declining to grant summary judgment in favor of Mr. Logan upon the equitable principles of constructive trust, resulting trust, unjust enrichment, and estoppel.

Defendants present an additional issue, which we have similarly restated as follows:

5. Whether this appeal is frivolous pursuant to Tennessee Code Annotated § 27-1-122.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S.Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Admissibility of Affidavit Evidence

As a threshold issue, we address Mr. Logan's assertion that the trial court erred by finding that certain affidavits, specifically those of Arnold E. Botts and H. L. Hughes, III, contained statements that would be inadmissible at trial. *See Davis v. McGuigan*, 325 S.W.3d 149, 168 (Tenn. 2010) ("When issues have been raised regarding the compliance of affidavits with the standards prescribed by Tenn. R. Civ. P. 56 or the admissibility of evidence contained in these affidavits, the threshold issue of admissibility should be resolved before determining whether or not unresolved questions of fact exist."). Mr. Logan argues that each affidavit at issue represents the respective affiant's personal knowledge and that to the extent each affidavit may contain hearsay, the statements would be admissible pursuant to particular hearsay exceptions. Defendants argue that the trial court properly found the affidavits inadmissible. Upon our careful review, we conclude that the trial court erred by declining to consider as admissible evidence statements in Mr. Botts's affidavit. We further conclude, however, that the trial court did not abuse its discretion by declining to consider as admissible statements of hearsay contained within Mr. Hughes's affidavit.

We note at the outset that "admissibility or exclusion of evidence rests within the sound discretion of the trial court which should be reversed only for abuse of that discretion." *Austin v. City of Memphis*, 684 S.W.2d 624, 634 (Tenn. Ct. App. 1984); *see also In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted).

Regarding affidavits presented in support of a motion for summary judgment, Tennessee Rule of Civil Procedure 56.06 requires in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Tennessee Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pursuant to Tennessee Rule of Evidence 802, "[h]earsay is not admissible except as provided by these rules or otherwise by law." *See also Godbee v. Dimick*, 213 S.W.3d 865, 894 (Tenn. Ct. App. 2006).

The trial court's finding regarding the admissibility of the affidavits is limited to the following sentence in the trial court's March 2014 memorandum opinion:

> Some of the supporting affidavits, including those of Arnold E. Botts and H. L. Hughes, III, are of no help to the Plaintiffs insofar as their contents contain information or averments that would be inadmissible in a trial of the case.

At the time of his June 2012 affidavit, Mr. Botts was an employee of Mr. Logan's law firm and had been since 1994. H. L. Hughes, III, is the son of a deceased farmer, H. L. Hughes, II, who had purportedly leased portions of the Property for grazing purposes. We will address the admissibility of each affidavit in turn.

Mr. Botts stated in his affidavit that Mr. Logan had held himself out to be the owner of the Disputed Interest and that "Mr. Logan was known to be the person in charge of the property." In the most problematic portion of his affidavit, Mr. Botts described what he claimed to have overheard during a telephone conversation between Mr. Logan and Mildred Cannon upon the occasion of Mr. Logan's calling Ms. Cannon after he had learned that no deed had been recorded. Mr. Botts stated that he overheard the conversation because the telephone was set to the "speaker" function in Mr. Logan's office. According to Mr. Botts, he "personally heard Ms. Cannon say that she remembered selling the property to Mr. Logan and that she did not know what had happened to the deed."

Mr. Logan asserts that Mr. Botts's hearsay statements describing the telephone conversation fall within what he terms "the statement-against-interest exception." In support of this exception, Mr. Logan cites Tennessee Rule of Evidence 803(1.2)(A), (F), which provides:

> (1.2) Admission by Party-Opponent. – A statement offered against a party that is (A) the party's own statement in either an individual or a representative capacity, or . . . (F) a statement by a person in privity of estate with the party. An admission is not excluded merely because the statement is in the form of an opinion. Statements admissible under this exception are not conclusive.

We note some common confusion here between the separate hearsay exceptions of admission by a party-opponent and declaration against interest. *See Curtis v. Van Dusen*, 723 S.W.2d 648, 650 (Tenn. Ct. App. 1986), *perm. app. denied* (Tenn. Jan. 20, 1987). As this Court has explained:

8

The expression "admission against interest" confuses two separate exceptions to the hearsay rule: admission by a party-opponent and declaration against interest. The two are not identical since an admission may be admissible only from a party whereas a declaration against interest may be admissible from a non-party provided in each case that the prerequisites of the exception are met. McCormick on Evidence, 3rd ed., § 262, sets forth the following:

> Admissions are the words or acts of a party-opponent, or of his predecessor or representative, offered as evidence against him . . . .

> A type of evidence with which admissions may be confused is evidence of declarations against interest. The latter, coming in under a separate exception to the hearsay rule, to be admissible must have been against the declarant's interest when made. No such requirement applies to admissions . . . . Hence, the common phrase in judicial opinions, "admissions against interest," is an invitation to confuse two separate exceptions to the hearsay rule and to engraft upon admissions an against-interest requirement without basis in reason or authority.

*Id.* at 650. In *Curtis*, as here, the precise hearsay exception at issue was "the question of admissibility of an admission by a party-opponent." *See id.* The *Curtis* Court went on to explain:

> No assertion of a party, if offered in evidence by a party-opponent, may be excluded as hearsay. It may be excluded on the ground that it is irrelevant, or privileged, or for many other reasons, but never because it is hearsay. It is always excepted to the hearsay rule as an admission of a party-opponent.

*Id.* (quoting Binder in Hearsay Handbook, 2nd ed.)

In the instance of Mr. Botts's statement regarding what he purportedly overheard Ms. Cannon say to Mr. Logan on the telephone, Ms. Cannon's statement is an admission of a party (Ms. Cannon) offered in evidence by a party-opponent (Mr. Logan). The statement would therefore be admissible under the hearsay exception provided in Tennessee Rule of Evidence 803(1.2) unless it would be excluded on another ground.

*See id.* Defendants, referencing the Dead Man's Statute, *see* Tenn. Code Ann. § 24-1-203 (2000), assert that Mr. Botts's statement in this regard is "unreliable because Botts is an employee of Logan law firm and the deceased in this action can offer no context and/or dispute the statements of Botts." The Dead Man's Statute, however, applies only when the proposed witness is a party to the suit. *See Matter of Estate of Pritchard*, 735 S.W.2d 446, 448 (Tenn. Ct. App. 1986), *perm. app. denied* (Tenn. June 29, 1987).

The Dead Man's Statute provides in pertinent part:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party.

Tenn. Code Ann. § 24-1-203. As this Court has explained:

> Two things must concur to bring a case within the operation of the statute and authorize the rejection of the evidence: (1) the proposed witness must be a party to the suit in such a way that judgment may be rendered for or against him; (2) the subject matter of his testimony must be of some transaction with or statement by the testator or intestate. *Montague v. Thomason,* 91 Tenn. 168 (1892).

*Pritchard*, 735 S.W.2d at 448. Moreover, Mr. Botts's status as an employee of Mr. Logan's firm does not render his statement inadmissible under the Dead Man's Statute under a theory of agency. *See id.* at 449 (holding that an attorney who had been an agent of the plaintiff law firm when legal services were rendered on behalf of the decedent was not barred from testifying regarding statements made by the decedent because the attorney was not personally a party to the action); *see, e.g., Poole v. First Nat'l Bank of Smyrna*, 196 S.W.2d 563, 566 (1946), *perm. app. denied* (Tenn. Oct. 5, 1946) ("The fact that the cashier was a stockholder, interested in the result, and had handled the transaction as agent for plaintiff did not disqualify him to testify to such transaction or statements by decedent."). We therefore conclude that to the extent the trial court found that Mr. Botts's statements regarding his personal observations, including any admission by Ms. Cannon he purportedly overheard, were inadmissible as evidence, the court erred.

Similarly, to the extent that Mr. Hughes's affidavit reflects his own observations of Mr. Logan's behavior in relation to the Property, his statements would not be considered hearsay if offered during testimony at trial. Such observations are somewhat broad and vague in Mr. Hughes's affidavit, however. He stated, "I have watched and

10

observed the property located at the Southeast corner of the intersection of Mouse Creek Valley Road and Lauderdale Highway for more than thirty-five years." He continued by stating that the Property "has been recognized as the property of James F. Logan, Jr., Jim Thompson, Conrad Finnell and another man since at least 1975" and that "Mr. Logan's ownership and control of the property has been open and known in the community [in] which the property exists." Mr. Hughes mentioned no specific observations to support these statements regarding the perception of the Disputed Interest as owned by Mr. Logan. Primarily at issue in Mr. Hughes's affidavit is his statement that his now-deceased father leased portions of the Property as grazing land beginning in the mid-1970s, entering into an agreement "specifically with James F. Logan, Jr. who acted as the person who owned and controlled the property." Mr. Logan argues that Mr. Hughes's statement regarding his father's agreement was offered as a non-hearsay operative fact and not for the truth of the matter asserted because it demonstrates that a conversation regarding the Property took place between Mr. Hughes's father and Mr. Logan. We disagree.

Nonhearsay "[o]perative facts are words that operate, by force of law, to cause legal consequences wholly apart from the truth or falsity of the words." *Bennett v. City of Memphis*, No. W2011-00577-COA-R3-CV, 2011 WL 6710447, at *7 (Tenn. Ct. App. Dec. 21, 2011) (quoting *State v. Eads,* No. E2006-02792-CCA-R3-CD, 2008 WL 2152494, at *8 (Tenn. Crim. App. 2008) (in turn quoting Neil P. Cohen et al., *Tennessee Law of Evidence* § 8.01[6][a] (5th ed. 2005)). As this Court has explained:

> "A statement introduced to prove only that it was made, regardless of the truth or falsity of the statement, does not violate the rule against hearsay." *State v. Brown,* 836 S.W.2d 530, 551 (Tenn. 1992) (citing *Cannon v. Chadwell,* 25 Tenn. App. 42, 150 S.W.2d 710, 712 (1941)).

> > One of the more difficult, though infrequently encountered, categories of nonhearsay evidence encompasses operative facts, sometimes referred to as verbal acts. Operative facts are words that operate, by force of law, to cause legal consequences wholly apart from the truth or falsity of the words. Substantive law may make the utterance of words an event that causes a change in legal relationships, irrespective of the truth or falsity of the words or the credibility of the speaker. Such words are not hearsay by definition since they are not being used to prove their truth. Indeed, the truth or falsity of the words is irrelevant; what matters is that the words were uttered.

11

*State v. Eads,* No. E2006-02792-CCA-R3-CD, 2008 WL 2152494, at *8 (Tenn. Crim. App. 2008) (quoting Neil P. Cohen et al., *Tennessee Law of Evidence* § 8.01[6][a] (5th ed. 2005)). Some examples of nonhearsay operative facts include words of acceptance in the context of whether a contract was formed and words of donative intent when deciding whether an object was a gift. *Id.* (citing *Cohen,* § 8.01[6][b], [c]). In a case involving rights acquired to land by prescription, one party's out-of-court statements giving the other permission to remain on the property were said to have had "legal significance and effectuate[d] legal consequences, in and of themselves," and therefore, the statements were not inadmissible hearsay. *Brown v. Daly,* 968 S.W.2d 814, 817-18 (Tenn. Ct. App. 1997).

*Bennett*, 2011 WL 6710447, at *6-7.

Contrary to Mr. Logan's argument, Mr. Hughes did not in his affidavit describe witnessing any conversation between his father and Mr. Logan. He simply stated in a conclusory fashion that his father entered into an agreement with Mr. Logan. Thus, Mr. Hughes's affidavit introduces no statement that would indicate the formation of a contract with Mr. Logan regarding use of the Property. The trial court did not abuse its discretion by finding that the portion of Mr. Hughes's affidavit not reflecting his personal observation indicated testimony that would be inadmissible at trial.

Defendants also argue that the Dead Man's Statute, *see* Tenn. Code Ann. § 24-1-203, operates to bar any testimony by Mr. Logan regarding the purported April 1974 agreement or any other transaction with Sam and Mildred Cannon. The record contains no indication, however, that the trial court made any finding regarding applicability of the Dead Man's Statute to Mr. Logan's affidavit or deposition testimony. We note that a copy of Mr. Logan's deposition testimony, which includes his description of entering into the purported oral agreement in April 1974, was presented by Defendants as an attachment to their motion for summary judgment. Additionally, Defendants' pleadings contain no objection based upon the Dead Man's Statute to Mr. Logan's affidavit or deposition testimony. We conclude that the issue of admissibility of Mr. Logan's testimony regarding any conversations with Sam or Mildred Cannon is not properly before this Court on appeal of the summary judgment. *See Dorrier v. Dark,* 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts[.]").

V. Statute of Frauds

Mr. Logan contends that the trial court erred by finding that his claim to the Disputed Interest was barred by the Statute of Frauds. Although he acknowledges that he can produce no written documentation of the purported April 1974 conveyance, he argues that the purported agreement was fully performed and that the Statute of Frauds does not therefore apply to bar it. Defendants assert that Mr. Logan failed to demonstrate that an agreement existed or that it was fully performed. They also argue that Mr. Logan is asserting an exception of "complete performance" that does not apply to real property sales in Tennessee. We conclude that the trial court did not err by finding that Mr. Logan's claim to title of the Disputed Interest was barred by the Statute of Frauds.

The Statute of Frauds, codified at Tennessee Code Annotated § 29-2-101 (2012), provides in pertinent part:

(a) No action shall be brought . . .

(4) Upon any contract for the sale of lands, tenements, or hereditaments . . .

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought.

Strict enforcement of the Statute of Frauds as to real property is the established rule in Tennessee. *See Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 593, *perm. app. denied* (Tenn. Aug. 29, 2005) ("It is well settled that an express easement, being an interest in land, must comply with the statute of frauds . . . .") (citing, *inter alia*, *Daugherty v. Toomey*, 222 S.W.2d 197, 201 (Tenn. 1949)); *see, e.g., Estate of Elrod v. Petty*, No. M2015-00568-COA-R3-CV, 2016 WL 3574963, at *5 (Tenn. Ct. App. June 23, 2016) ("Because this purported [oral] contract involves the sale of real property, it is subject to the statute of frauds.").

In granting summary judgment in favor of Defendants on their affirmative defense of the Statute of Frauds, the trial court found in its March 2014 memorandum opinion in relevant part:

13

In the instant suit there is no deed or other written document evidencing any agreement or conveyance whatsoever by Sam and/or Mildred Cannon to the Plaintiff, Logan. Furthermore, Logan cannot produce any bank check or other form of payment or receipt of payment to the Cannons for their undivided interest in the subject property. Moreover, Logan, is unable to show any payment of property taxes on the disputed property prior to 1996.

Upon our thorough review of the record, we agree with the trial court on this issue.

Mr. Logan initially asserts that parol agreements for the sale of land are not void *ab initio* but only voidable. He relies for this proposition on our Supreme Court's decision in *Waddle v. Elrod*, 367 S.W.3d 217 (Tenn. 2012). As the Court explained:

> While this Court has long emphasized that the Statute of Frauds should be strictly adhered to and construed to accomplish its intended purposes, *Newman v. Carroll,* 11 Tenn. (3 Yer.) 18, 26 (1832), the Statute of Frauds is an affirmative defense. *See* Tenn. R. Civ. P. 8.03. In other words, parol agreements within the Statute of Frauds are not void ab initio, and <u>enforcement of such agreements may be barred only if a party pleads the Statute of Frauds.</u> *See, e.g., Cobble* [*v. Langford*]*,* 230 S.W.2d [194,] 196 [(Tenn. 1950)]; *Bailey v. Henry,* 125 Tenn. 390, 143 S.W. 1124, 1127 (1912); *Brakefield v. Anderson,* 87 Tenn. 206, 10 S.W. 360, 361 (1889). Parties may choose to abide by parol contracts for the sale of land. *Bailey,* 143 S.W. at 1127 ("[I]f the parties themselves choose to execute the contract, third parties cannot object."); *Brakefield,* 10 S.W. at 361 ("Such a contract may be enforced by the consent and upon the application of both parties.").

*Waddle*, 367 S.W.3d at 223-24 (emphasis added). We fail to see how this argument advances Mr. Logan's cause inasmuch as Defendants have clearly raised the Statute of Frauds as an affirmative defense and have denied that an agreement regarding conveyance of the Disputed Interest ever existed between Mr. Logan and Sam and Mildred Cannon.

Mr. Logan also argues that the purported April 1974 agreement should be removed from operation of the Statute of Frauds because the agreement has been fully performed, insisting that his use and control of the Property since 1974 and his payment of one-fourth of the property taxes evinces full performance of the conveyance. He relies on this Court's decision in *Nunley v. Nunley*, 925 S.W.2d 538 (Tenn. Ct. App. 1996), *perm. app. denied* (Tenn. July 1, 1996), a post-divorce case involving the twenty-year-old

sale of a songwriter's mechanical royalty rights. Despite the destruction of the original contract in a fire and the difficulty of obtaining testimony from the party in whom the mechanical royalty rights had vested, this Court determined that "[t]he evidence is overwhelming that [the songwriter] assigned his royalty rights pursuant to the agreement." *Nunley*, 925 S.W.2d at 542 ("'If an oral contract, otherwise within the statute is completely executed or performed, it is taken out of the operation of that statute.'") (quoting 73 Am. Jur. 2d *Statute of Frauds* § 527)). Defendants argue that the facts in *Nunley* are highly distinguishable from the instant action because such a "complete performance" exception does not apply to sales of real property in Tennessee.

Inasmuch as complete performance of a contract for sale of real property entails a delivered deed, we agree that an "exception" for complete performance necessarily cannot apply to this situation in which no deed has been produced indicating a conveyance to Mr. Logan. *See Hughes v. New Life Dev. Corp.,* 387 S.W.3d 453, 466 (Tenn. 2012) ("'In Tennessee, as in other states, land conveyances generally occur in a two step process: execution of a land sale contract followed by execution and delivery of a deed.'") (quoting *In re Gee,* 166 B.R. 314, 317 (Bankr. M.D. Tenn. 1993)); *see also Cox v. McCartney*, 236 S.W.2d 736, 738 (Tenn. 1950) ("An undelivered deed passes no title and is of no effect."). Furthermore, as this Court recently explained, "'it has long been the rule in this state that partial performance will not prevent the application of the Statute of Frauds to an agreement involving interests in real estate.'" *Estate of Elrod*, 2016 WL 3574963, at *5 (quoting *Owen v. Martin,* No. M1999-02305-COA-R3-CV, 2000 WL 1817278, at *4 (Tenn. Ct. App. Dec. 13, 2000)).

Finally, in his statement of the issues presented on appeal, Mr. Logan appears to invoke the exception to the Statute of Frauds that may be provided by equitable estoppel in sales of real property. *See Daugherty v. Toomey*, 222 S.W.2d 197, 199 (Tenn. 1949) ("[U]pon numerous occasions [the Court has] avoided the letter of the statute [of frauds] by the enforcement in cases of this character of the equitable estoppel rule."); *Farley v. Ellis*, No. W2000-00354-COA-R3-CV, 2000 WL 1876431, at *6 (Tenn. Ct. App. Dec. 27, 2000) ("In exceptional cases, the application of the doctrine of equitable estoppel has been used to mitigate the harshness of this rule, 'where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud.'") (quoting *Baliles v. Cities Serv. Co.*, 578 S.W.2d 621, 624 (Tenn. 1979)). Although it may be applied as an exception to the Statute of Frauds, equitable estoppel is not itself a basis for affirmative relief. *See Deal v. Tatum*, No. M2015-01078-COA-R3-CV, 2016 WL 373265, at *8 (Tenn. Ct. App. Jan. 29, 2016) ("While equitable estoppel 'is a shield a plaintiff can raise against the defense of the statute of frauds when the defendant has knowingly misrepresented a fact,' it is not a basis for affirmative relief.") (footnote

15

omitted) (quoting *Seramur v. Life Care Ctrs. of Am., Inc.,* No. E2008-01364-COA-R3-CV, 2009 WL 890885, at \*5 (Tenn. Ct. App. Apr. 2, 2009)).[4]

We determine that by failing to present an argument regarding estoppel, Mr. Logan has waived estoppel as an issue on appeal. *See* Tenn. R. App. P. 27(a)(7); *Sneed v. Bd. of Prof'l Responsibility,* 301 S.W.3d 603, 617 (Tenn. 2010) (determining an issue to be waived when the appellant failed to argue the issue or cite any legal authority in support of his position). Mr. Logan includes "estoppel" within the "equitable principles" he asserts the trial court should have applied to grant summary judgment in favor of his claim to ownership of the Disputed Interest. He does not, however, address the doctrine of equitable estoppel or even clarify which type of estoppel he is asserting in the argument section of his brief. *See, e.g., Seramur v. Life Care Ctrs. of Am., Inc.,* No. E2008-01364-COA-R3-CV, 2009 WL 890885, at \*5 (Tenn. Ct. App. Apr. 2, 2009) (distinguishing between promissory estoppel as "a sword, based on the failure to deliver on a promise" and equitable estoppel as "a shield . . . ."). Moreover, the record contains no indication that Mr. Logan raised an estoppel doctrine as an issue before the trial court. The issue of estoppel is therefore not properly before this Court. *See Dorrier,* 537 S.W.2d at 890 (noting that appellate courts are "limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . ."). The trial court did not err by granting summary judgment in favor of Defendants pursuant to the affirmative defense of the Statute of Frauds.

## VI. Adverse Possession

Mr. Logan also contends that the trial court erred by granting summary judgment to the Defendants on Mr. Logan's alternative theory of ownership by adverse possession pursuant to common law. He maintains that the "undisputed" facts indicated that he had established ownership by adverse possession and that the trial court should therefore have granted summary judgment in his favor on this issue. Defendants assert that the trial court properly found that any use of or control over the Property by Mr. Logan was insufficient to place others on notice that he was claiming ownership of the Disputed Interest. Upon our thorough review of the record, we conclude that genuine issues of

---

[4] The doctrine of equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

*Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990).

material fact exist regarding Mr. Logan's use of and control over the Property such that summary judgment in favor of either party on this issue is not appropriate.

Regarding common law adverse possession, our Supreme Court has explained:

> In our state, common law adverse possession rests upon the proposition "that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed." Color (or assurance) of title is not required. In order to establish adverse possession under this theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. Adverse possession is, of course, a question of fact. The burden of proof is on the individual claiming ownership by adverse possession and the quality of evidence must be clear and convincing. The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor.

*Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 376-77 (Tenn. 2007) (internal citations omitted).[5] We note that the twenty-year period prior to commencement of the instant action began in February 1991.

In addition to the affidavits of Mr. Botts, Mr. Hughes, and himself, Mr. Logan presented affidavits relevant to this issue that were executed by James S. Thompson, tenant in common owning one-quarter interest in the Property; Sandra Evilsizer, successor in title to her husband as a tenant in common owning one-quarter interest in the Property; Jenny Rogers, successor in title to her father as a tenant in common owning one-quarter interest in the Property; Janet Kibler, sister to Mr. Finnell and long-time legal secretary and bookkeeper in Mr. Logan's law firm; Darlene D. Felker, Mr. Logan's personal secretary and legal assistant since 1994; Cynthia A. Logan, Mr. Logan's wife; and Michael J. Smith, Bradley County Trustee. In general, statements in the affidavits submitted by Mr. Logan corroborate his claim that he had been perceived in the community since 1974 to be the owner of the Disputed Interest.

---

[5] In contrast to common law, statutory provisions regarding adverse possession in Tennessee, *see* Tenn. Code Ann. §§ 28-2-101 to -103 (2000 & Supp. 2016), provide rights that "may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner," *see Cumulus*, 226 S.W.3d at 376.

17

James S. Thompson stated in his affidavit in relevant part:

> Conrad Finnell, Bill Wright and I allowed James Logan to actively manage the property, believing that he held a 1/4th interest therein and I am aware of the fact that he had with our approval, contacted a Mr. Hughes and his son and authorized them to use the property. James Logan, Jr. has clearly been more active in the management of the property than any other co-tenant for the past 35 years or so.

Ms. Kibler stated regarding this issue: "Since the mid-1970s, Logan has been the person who has been the contact person regarding the use of the property. His possession of the one-fourth interest has been open and known by anyone who would call or communicate regarding the property." Ms. Evilsizer related the story of her daughter and a friend going to the Property several years before to cut down a Christmas tree and being "confronted by Mr. H. L. Hughes," who "informed them that he had been authorized to use the property for grazing purposes or something to that effect by James Logan[,] Jr." According to Ms. Evilsizer, she subsequently visited Mr. Logan's and Mr. Thompson's law office "and verified that James Logan[,] Jr[.] had in fact authorized Mr. Hughes and his son to use the property." In her affidavit, Ms. Rogers stated, "As long as I can remember, which is more than twenty years, I have known that James F. Logan, Jr. was the owner of the remaining interest of the property."

The majority of Mr. Logan's potential witnesses thus submitted sworn statements that Mr. Logan was the individual whom people routinely contacted regarding information about or use of the Property, and they also maintained that he was generally known in the community to be the owner of the Disputed Interest. Cynthia Logan testified that she and Mr. Logan had begun dating in 1978 and had married in 1980. She stated in her affidavit in pertinent part:

> From that time [1978], I have personal knowledge that my husband episodically checked on the property, worked occasionally in cleaning the fence row, making certain the property was maintained and placing and replacing "No Trespassing" signs. He met and discussed with various people the potential sale uses of the property. I have been with him on more than sixty occasions when he has done so. I have received telephone calls from individuals and my husband has asserted his control and ownership of that property to the exclusion of everyone except Conrad Finnell until his death, Bill and Sandra Wright and James S. Thompson.

Regarding his presence on the Property and maintenance of it, Mr. Logan testified by deposition as follows:

18

I was the person who was allowed to make sure that everything stayed mowed and that kind of thing and to show the property. And there were weekends that I cleared some of the fencerow place. Even though H. L. Hughes had come and asked if we would let him graze the property and keep it mowed, and he had done so. H. L. then got very, very sick. And then his children have kept that part of it.

But in terms of – there have only been a few times that I've cleaned portions of the fencerow. I cleaned out one corner because I was going to show it, and I cleaned the underbrush so that people could see the entranceway from the corner there. Wasn't much to it in terms of keeping it up. We just had to keep the taxes paid and hope that progress would come. Progress has come . . . .

Defendants argue that Mr. Logan's adverse possession claim bypasses the important element of actual use and possession of the Property. They presented affidavits completed by Janna Sullivan, Mildred Cannon's daughter and the representative of her estate, and Stanley Thompson, the Assessor of Property for Bradley County. As relevant to this issue, Ms. Sullivan stated in her affidavit:

During her lifetime, my mother, Mildred Cannon, informed me that she never executed a deed conveying her interest in certain property located off of Mouse Creek Road and Lauderdale Highway to James F. Logan, Jr.

To the best of my knowledge, I am unaware of James F. Logan, Jr. ever taking any action to exclude either my father, Sam Cannon, or my mother, Mildred Cannon, from the subject property.

To the best of my knowledge and belief, the subject property is owned by several individuals as tenants in common. To the best of my knowledge, there are not or never have been any improvements on the property that would demonstrate specific individuals exercising any control over the subject property.

Other than Ms. Sullivan's denial of Mr. Logan's control, Defendants did not present any evidence to directly counter Mr. Logan's claim that he had at least minimally maintained the Property, which the parties agree remained at time of the hearing as unimproved, open pastureland.

In finding that Mr. Logan could not prove his claim of title by adverse possession, the trial court stated in its March 2014 memorandum opinion in pertinent part:

> Logan's claim to title by adverse possession is likewise unsupported by the evidence. All parties admit that the disputed property is open farmland. The field may have been used for some time as pasture, but it was never enclosed in a way calculated to give notice by Logan or the other Plaintiffs that the tract was being claimed adversely, continuously, exclusively, or under a claim of right as against anyone, including the Cannons. At most, Logan was observed only infrequently at the property and there is no conduct attributed to him or to the other Plaintiffs that would establish a claim by adverse possession.

Although the evidence supports the trial court's finding that the Property was never enclosed, we disagree with the court's conclusion that no genuine issue of material fact exists to support Mr. Logan's claim of control over the Property.

Defendants raise an important point by stating that the witness affidavits presented by Mr. Logan by and large originate from his law firm associates, including original co-plaintiffs, Mr. Thompson and Ms. Rogers, as well as employees of the firm. Inasmuch as Mr. Logan is in business with the co-tenants of the Property, his relationship to these witnesses and their potential interest in the outcome of the case is undeniable. Likewise, Ms. Logan shares a personal and financial interest in Mr. Logan's holdings. The effect of such relationships on the veracity of the witnesses' potential testimony, however, is an issue Defendants could address through cross-examination at trial, not one that should cause the trial court to discount their affidavits at the summary judgment stage. *See Davis*, 325 S.W.3d at 168 ("After these threshold questions [of admissibility] have been addressed, the trial court may then determine whether, taking the strongest view of the admissible evidence in favor of the non-moving party, there remain any genuine issues of material fact to be decided at trial.") (emphasis added).

The trial court also found that the evidence proffered by Mr. Logan was insufficient to demonstrate that he had paid property taxes on the Disputed Interest for a sufficient length of time to support a claim of adverse possession. Although payment of property taxes is not proof of adverse possession, it may be considered as an indication of the party's intent to claim the land. *See Bone v. Loggins*, 652 S.W.2d 758, 760 (Tenn. Ct. App. 1982), *perm. app. denied* (Tenn. Feb. 22, 1983) ("[E]ven assuming that the appellants did pay the taxes, payment of taxes merely shows an intention to claim the land, it is not evidence of adverse possession."). Specifically, the trial court stated in its March 2014 memorandum opinion:

20

The strongest evidence in favor of Logan's claim to a one-fourth interest in the disputed property is the fact that he was listed by the Bradley County Trustee as one of the co-owners from 1996 to the present. But there are no tax receipts available to the Plaintiffs in support of his claim. His assertion to have paid taxes is bolstered by the Affidavit of Darlene D. Felker, his secretary, and of Janet Kibler, who was responsible for collecting tax contributions from the co-owners from the time she heard that Logan had acquired the Cannon[s'] interest in the property back in the 1970s. Kibler received the tax statements from the Trustee and would then solicit from the co-owners their portion of the tax obligation and make payments on their behalf. She collected and paid Logan's one-fourth (1/4) share of the taxes on the subject property. But there are no tax receipts supporting Logan's claim that he has paid his share of the property taxes since his purported acquisition of the Cannon[s'] interest in 1974. Photocopies of checks from Logan for his share of property taxes only cover recent years.

Although acknowledging that he could not produce actual tax receipts he received that reflected his payment of property taxes, Mr. Logan asserts that the trial court failed to properly consider other admissible evidence concerning his payment of property taxes relative to the Disputed Interest since 1974. As the trial court noted, Mr. Logan presented an affidavit executed by Bradley County Trustee Michael J. Smith, stating the following in pertinent part:

> I have reviewed the property tax records of Bradley County[,] Tennessee to ascertain who paid the taxes on the subject property. The records for payments before 1996 do not reflect the payor. They merely reflect that the taxes were paid. From 1996 to present, James F. Logan, Jr. has paid one-fourth of the property taxes assessed against the listed property. I have attached the receipts for tax years 1996 to present.

Mr. Smith attached to his affidavit Bradley County tax records reflecting that Mr. Logan paid one-quarter of the taxes for the Property from 1996 through 2010. Ms. Kibler stated in her affidavit that she had been designated by the co-owners of the Property since the early 1970s to "receive the annual tax records" and that in "the mid-1970s," Mr. Logan began paying one-quarter of the property taxes after what Ms. Kibler understood to be his purchase of the Disputed Interest from Sam and Mildred Cannon. Ms. Felker stated in her affidavit that since her hire date with Mr. Logan's law firm in 1994, she had received a note regarding the property taxes from Ms. Kibler each year and had collected "a personal check drawn on [Mr. Logan's] personal funds" to forward as one-quarter payment of the taxes on the Property. James Thompson and Cynthia Logan also asserted

personal knowledge that Mr. Logan had paid one-quarter of the taxes on the Property since April 1974.

Defendants, however, presented an affidavit completed by the Bradley County Assessor of Property, Stanley Thompson, in which he stated in relevant part:

> The assessment records of Bradley County, Tennessee, show that certain property identified on Tax Map 15 Parcel 26.01 was assessed to C. W. Wright, Jr., Finnell, Thompson and Cannon for the tax years of 1999 through 2008.

> In 2009, the tax assessment was changed to C. W. Wright, Jr., Finnell, Logan, and Thompson.

> Until the 2009 tax year, there is no indication in the records of the Bradley County Assessor's office showing that the taxes for the identified parcel were assessed to Jim Logan.

A genuine issue of material fact therefore exists regarding whether Mr. Logan demonstrated his intent to claim the Disputed Interest by paying property taxes on it from at least 1991, twenty years prior to filing the complaint.

We recognize that Defendants have also argued that Mr. Logan took no action amounting to an ouster of Mildred Cannon or her estate as a co-tenant. *See Drewery v. Nelms*, 177 S.W. 946, 948 (Tenn. 1915) ("The mere silent, sole occupation by one of the entire property, though he be claiming the whole estate, and appropriating the whole rents, without an accounting to or claim by the others, without notice to his cotenant that his possession is adverse, and unaccompanied by some act which can amount to an exclusion and ouster of the cotenant, cannot be construed into an adverse possession."). We determine, however, that according to Defendants' argument that Sam and Mildred Cannon never agreed to convey the Disputed Interest to Mr. Logan, he could not have been a co-tenant with the Cannons. Similarly, according to Mr. Logan's argument that he either obtained the Disputed Interest through a 1974 agreement with the Cannons or claimed it through adverse possession, he could not have been a co-tenant with the Cannons. Adverse possession established by proof of an actual ouster is a rule predicated on the status of the parties as co-tenants. *See Roberts v. Bailey*, 470 S.W.3d 32, 41 (Tenn. 2015). We therefore determine that Defendants' argument regarding ouster is inapplicable to the facts of this case.

In this action, each party has respectively moved for summary judgment on Mr. Logan's alternative theory of adverse possession. Taking the strongest view of the

admissible evidence in favor of each party in the status as non-moving party, we determine that genuine issues of material fact exist regarding whether Mr. Logan has maintained control of the Disputed Interest in the Property and, if so, whether Defendants had knowledge of his adverse possession or whether such adverse possession was so open and notorious in the community as to imply a presumption of that fact. We therefore reverse the trial court's grant of summary judgment to Defendants on the issue of adverse possession and remand for an evidentiary hearing on this claim.

## VII. Resulting or Constructive Trust

Mr. Logan's argument regarding equitable remedies is based on the specific theories of resulting or constructive trust. He argues that the trial court erred by declining to find that a resulting or constructive trust was created when Defendants "merely held title to the [Disputed Interest in the] Property as trustee for Logan . . . ." He also invokes the doctrine of unjust enrichment by maintaining that it would be unjust for the Cannons to have reaped the benefit of receiving $6,400 from Mr. Logan in 1974 in exchange for title to the Disputed Interest and yet be allowed to retain title to the Disputed Interest, now for the benefit of their heirs. *See In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993) ("The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment.").[6] Defendants contend that the trial court properly dismissed Mr. Logan's claim in this regard because Mr. Logan failed to present any admissible evidence to establish that Sam and Mildred Cannon ever intended to establish a resulting trust related to the Disputed Interest or that they acted fraudulently or in bad faith so as to establish a constructive trust. We agree with Defendants on this issue.

In defining a resulting trust, our Supreme Court has explained:

Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.

---

[6] On appeal, Mr. Logan also has listed "estoppel" as an equitable principle within his statement of this issue. As explained in a previous section of this Opinion, we have determined that by failing to present an argument regarding estoppel, Mr. Logan has waived estoppel as an issue on appeal. *See* Tenn. R. App. P. 27(a)(7).

*In re Estate of Nichols*, 856 S.W.2d at 401. This Court has explained how a constructive trust may arise as follows:

> A constructive trust is one that arises contrary to intention and in invitum, against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not, in equity and good conscience hold and enjoy.

*Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980).

On remand, the trial court considered arguments of counsel regarding Mr. Logan's claim of a constructive and/or resulting trust and subsequently denied the claim upon finding that Mr. Logan had presented no "clear and convincing" evidence in support of a constructive or resulting trust. We note that because a resulting trust would require a finding of intent, implied or presumed as a matter of law, to create a trust on the part of the Cannons and, in the alternative, a constructive trust would require a finding of fraud or bad faith on the part of the Cannons, such a claim would be almost entirely dependent on Mr. Logan's testimony regarding his dealings with Sam and Mildred Cannon in 1974. Although, as we explained in a previous section of this Opinion, the issue of the Dead Man's Statute in relation to Mr. Logan's testimony was not raised by the Defendants until the instant appeal, nothing would prevent Defendants from objecting at trial to Mr. Logan's testimony against an opposing party who is now deceased. *See* Tenn. Code Ann. § 24-1-203.

Even assuming, *arguendo*, that all of Mr. Logan's testimony regarding his purported 1974 agreement with Sam and Mildred Cannon would be deemed admissible at trial, he has presented no evidence that would indicate an intent on the part of either Sam or Mildred Cannon to create a resulting trust or any act of "fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means" that would give rise to a constructive trust. *See Livesay*, 611 S.W.2d at 584. According to Mr. Logan's deposition testimony, he believed in April 1974 that Mr. Cannon "was going to talk to Jim Thompson," who would draft the deed, after which Mr. Cannon would record the deed. Mr. Logan, a licensed attorney who was already in 1974 a partner in a law firm with James Thompson, does not dispute that he never ensured that a deed had been executed and recorded. The evidence presented, even viewed in the light most favorable to Mr. Logan, simply reveals no genuine issue of material fact that would give rise to the

establishment of a resulting or constructive trust.  The trial court did not err by granting summary judgment in favor of Defendants on this issue.

## VIII.  Attorney's Fees on Appeal

Defendants include a penultimate section in their brief in which they request "damages" on appeal upon their assertion that this is a frivolous appeal.  Tennessee Code Annotated § 27-1-122 (2000) provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

We determine that this appeal was not frivolous or taken solely for delay, particularly considering Mr. Logan's partial success on appeal.  *See Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) ("A frivolous appeal is one that is devoid of merit . . . or one that has no reasonable chance of succeeding.").  Accordingly, Defendants' request for attorney's fees on appeal is denied.

## IX.  Conclusion

For the reasons stated above, we reverse the trial court's grant of summary judgment in favor of Defendants on Mr. Logan's claim of adverse possession and remand for an evidentiary hearing regarding this claim.  We also reverse the trial court's finding regarding the admissibility of the statements in Mr. Botts's affidavit involving his personal observations, particularly of any admission made by Ms. Cannon.  We affirm the trial court's judgment in all other respects, including the grant of summary judgment in favor of Defendants on all other claims.  Defendants' request for an award of attorney's fees on appeal is denied.  This case is remanded to the trial court for proceedings consistent with this opinion and collection of costs below.  Costs on appeal are taxed one-half to the appellant, James F. Logan, Jr., and one-half to the appellees, the Estate of Mildred Cannon by and through the Personal Representative, Janna Sullivan; Janna Cannon Sullivan, Individually; Janna Cannon Sullivan as Co-Trustee; and Comerica Bank, Successor Co-Trustee.

_____
THOMAS R. FRIERSON, II, JUDGE

25