Billy D. BALILES, Petitioner,

v.

CITIES SERVICE COMPANY,
Respondent.

Supreme Court of Tennessee.

March 5, 1979.

Thomas Noel Phillips, Copperhill, for petitioner.

Arthur G. Seymour, W. Kyle Carpenter, Frantz, McConnell & Seymour, Knoxville, for respondent.

### OPINION ·

COOPER, Justice.

This is an action for specific performance of a contract for the sale of real property or, in the alternative, for damages for its breach. The chancellor decreed specific performance on completion of a condition precedent. The Court of Appeals reversed the chancellor's decree and dismissed the action.

Certiorari was granted to review the determination by the Court of Appeals that the written memorandum of an agreement to sell real estate was not sufficient to comply with the statute of frauds (T.C.A. § 23–201(4)); and that neither the doctrine of part performance nor estoppel was effective to take the transaction out of the statute of frauds.

In July 1974, the respondent Cities Service Company orally agreed to sell one of its employees, Dewey M. Newman, Jr., lots 99 and 100 in the Cherokee Hills Subdivision. It became necessary for Mr. Newman to borrow money from the local bank to cover costs of the construction planned for lots 99 and 100. An official of the bank requested a letter from respondents setting forth its commitment to sell lots 99 and 100 to Mr. Newman. On July 23, 1974, respondent sent the following letter to the bank, addressed to Mr. Newman:

Cities Service Company has agreed to sell to you lots 99 and 100 in Cherokee Hills for residential purposes.

As soon as residences are well under construction deeds to these lots will be delivered to you.

On receipt of the letter, the bank loaned Mr. Newman $5,000.00. Mr. Newman then began construction of a residence on lot 100. He completed the foundation and the outerwalls of a ground-level basement before encountering financial difficulties.

In the summer of 1975, being in financial difficulty and realizing that he had no chance to build a second house, Mr. Newman went to respondent's offices and released lot 99 to respondent. It also appears that he requested a deed to lot 100, but was refused "until the house was in the dry."

On August 25, 1975, Mr. Newman assigned his interest in lots 99 and 100 to petitioner, Billy D. Baliles, for $6,500.00, the approximate value of the labor and materials expended in improving lot 100.

Petitioner wrote respondent on December 14, 1975, informing it that he had acquired Mr. Newman's interest in lot 100. By letter, dated December 16, 1975, respondent took the position that the agreement between it and Mr. Newman was not assignable.

Thereafter petitioner filed a complaint in the Chancery Court of Polk County, Tennessee, seeking specific performance of the agreement between respondent and Mr. Newman or, in the alternative, damages for its breach.

Cities Service Company defended the action on the grounds (1) the written memorandum signed by respondent was not sufficient to comply with the statute of frauds; (2) the agreement was not assignable by Mr. Newman to a non-employee; and (3)

that petitioner was not entitled to a deed to lot 100 since the condition precedent of having the residence "well under construction" had not been met.

The chancellor found the memorandum of the agreement for the sale of lots 99 and 100 met the requirements of the statute of frauds. He further found that the assignment by Mr. Newman of his rights in lot 100 under the contract to petitioner was valid and would be enforceable when the residence on lot 100 was "well under construction"—which the chancellor concluded to be when the residence was "under roof." The chancellor then ordered respondent to execute a deed to petitioner for lot 100 when the residence was put "under roof."

The chancellor also found that the assignment by Mr. Newman to petitioner of his rights to lot 99 was ineffectual, as Mr. Newman had returned that lot to defendant before the assignment was executed.

Respondent appealed from that part of the chancellor's decree that affected lot 100. The Court of Appeals reversed the chancellor, holding that the memorandum of the agreement between respondent and Mr. Newman does not comply with the requirements of the statute of frauds. The Court of Appeals further held that part performance would not take the contract in question out of the operation of the statute of frauds, and that plaintiff could not rely upon the doctrine of equitable estoppel under the circumstances of this case. The Court of Appeals also noted that even if the agreement to sell lot 100 was not within the statute of frauds the petitioner was not entitled to a deed to the property because a condition precedent to receiving a deed— that is, to have the residence under roof— had not been met.

The applicable section of the statute of frauds, T.C.A. § 23–201, provides that:

No action shall be brought: * * * (4) upon a contract for the sale of lands . . [u]nless the promise or agreement upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

■ The purpose of the statute of frauds "is to reduce contracts to a certainty, in order to avoid perjury on the one hand and fraud on the other." *Price v. Tennessee Products & Chemical Corporation,* 53 Tenn.App. 624, 385 S.W.2d 301 (1964). Consequently, to comply with the statute of frauds, a memorandum of an agreement to sell must show, with reasonable certainty, the estate intended to be sold.

Where the instrument is so drawn that upon its face it refers necessarily to some existing tract of land, and its terms can be applied to that one tract only, parol evidence may be employed to show where the tract so mentioned is located. But, where the description employed is one that must necessarily apply with equal exactness to any one of an indefinite number of tracts, parol evidence is not admissible to show that the parties intended to designate a particular tract by the description." *Dobson v. Litton,* 45 Tenn. 616. *See also Dry Goods Co. v. Hill,* 135 Tenn. 60, 185 S.W. 723 (1916).

■ The memorandum relied on by petitioner as written evidence of the agreement to sell, and which is set out above, does not locate the Cherokee Hills Subdivision by county or state. Neither does it contain any information which would tend to locate the subdivision. Further, the description of the specific property that is the subject of the oral agreement is by lot numbers only. There is no recorded plat to show the location of lot 100 within the subdivision, nor its dimensions or calls.

In *Kirshner v. Feigenbaum,* 180 Tenn. 476, 176 S.W.2d 806 (1944), it is pointed out that a memorandum of an agreement for the transfer of an interest in real property which fails to designate the county and state where the land is located is insufficient under the statute of frauds, unless the description of the property as set out in the memorandum is otherwise so definite and exclusive that "it does not reasonably appear that the description given would fit equally any other tract, then parol proof is

admissible to locate and designate the tract intended."

We think it evident, and we agree with the Court of Appeals, that the description in the memorandum does not describe the tract of land with reasonable certainty, that the description is of no material aid in locating the property that is the subject of the agreement to sell, and consequently does not satisfy the requirements of the statute of frauds.

Petitioner insists that even though the memorandum of the agreement to sell is insufficient to meet the requirements of the statute of frauds, the agreement should be enforced on the basis of part performance, or by the application of the doctrine of estoppel.

■ The appellate courts of this state consistently have refused to enforce an oral contract for the sale of land on the basis of part performance alone. *Knight v. Knight,* 222 Tenn. 367, 436 S.W.2d 289 (1969); *Goodloe v. Goodloe,* 116 Tenn. 252, 92 S.W. 767 (1905). And, it is now a rule of property in this state that part performance of a parol contract for the sale of land will not take the agreement out of the statute of frauds. *Goodloe v. Goodloe, supra.* The harshness of this rule has been mitigated by the application of the doctrine of equitable estoppel in exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud. *Covington v. McMurray,* 4 Tenn.C.C.A. 378 (1913); *Gheen v. Osborne,* 58 Tenn. 61 (1872). *See also Decherd v. Blanton,* 35 Tenn. 373 (1855); *Williams v. Conrad,* 30 Tenn. 412 (1850); *Bloomstein v. Clees Brothers,* 3 Tenn.Ch. 433 (1877); *Interstate Co. v. Bry-Block Mercantile Co.,* 30 F.2d 172 (D.C.W.D.Tenn.) (1928).

"Equitable estoppel, in the modern sense, arises from the 'conduct' of the party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do any thing. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or been enforceable by other rules of law, unless prevented by an estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." *Evans v. Belmont Land Co.,* 92 Tenn. 348, 365, 21 S.W. 670, 673–674 (1893).

■ We think this is such a case. In dealing with Mr. Newman, respondent not only placed him in possession and permitted him to construct improvements on lot 100, but took affirmative action thereafter to aid Mr. Newman secure a $5,000.00 loan—this latter action being taken with the knowledge that the proceeds of the loan were to be used in the construction of a dwelling on lot 100. In the face of this affirmative action by respondent, to allow it to set up the statute of frauds as bar to enforcement of the agreement to sell lot 100 to Mr. Newman, and thus secure to itself the improvements on lot 100 would be a gross injustice and moral fraud on Mr. Newman.

■ Petitioner had no direct dealings with respondent relative to lot 100, except to give notice of the assignment executed by Mr. Newman. However, by virtue of the assignment, petitioner acquired all the rights and remedies possessed by Mr. Newman under the agreement to sell, and took the contract subject to the same restrictions, limitations, and defenses as it had in the hands of Mr. Newman. *See generally,* 6A C.J.S. Assignments § 88. It follows that since it is unconscionable to allow respondent to set up the statute of frauds as a bar to enforcement of the agreement to sell lot 100 to Mr. Newman, it would be unconscionable to permit the defense to be interposed in this action brought by Mr. Newman.

■ Respondent argues that the agreement to sell lot 100 was not assignable—that it was a special kind of contract entered into only with respondent's employees. We find nothing in the record to indicate that the agreement was not assignable.

To the contrary, the representative of respondent who made the agreement testified that there was nothing to prevent an employee from taking a lot, putting up a house, and then selling it to someone who was not an employee.

The Court of Appeals pointed out in its opinion that even if the agreement to sell lot 100 is enforceable, respondent is not now entitled to a deed to the property because a condition precedent to receiving a deed—that is, to have the residence under roof—has not been met. The chancellor also recognized that the condition precedent had not been met by petitioner at the time of trial of the cause. He also noted the practical difficulty, or dilemma, faced by petitioner in expending additional monies on the residence to place it under roof in the face of the insistence of respondent that Mr. Newman's rights in lot 100 were not assignable, and absent a judicial declaration of the efficacy of the agreement between Mr. Newman and respondent. In resolving this dilemma, the chancellor pointed out that the action brought by petitioner "conforms to a certain extent to a declaratory judgment." The chancellor then undertook to declare the rights of the parties in the agreement. He held the agreement to sell was enforceable, the assignment was valid, and that petitioner would be entitled to a deed to lot 100 when he had the residence under roof. We think the chancellor's findings were correct and that his declaration of petitioner's right to a deed to lot 100, when the condition precedent is met, was timely and proper.

The judgment of the Court of Appeals is reversed. The judgment of the chancellor is affirmed. Costs of the cause are adjudged against respondent.

FONES, BROCK, and HARBISON, JJ., and ALLISON B. HUMPHREYS, Special Judge, concur.