In re H. Truman GEE, Debtor.

Susan R. LIMOR, Trustee, Plaintiff,

v.

Phillip E. DANIEL, et al., Defendants.

Bankruptcy No. 389–07491.
Adv. No. 392–0178A.

United States Bankruptcy Court,
M.D. Tennessee.

Dec. 7, 1993.

Susan R. Limor, Nashville, TN, Trustee/plaintiff pro se.

Joel H. Moseley, Nashville, TN, for defendants.

## MEMORANDUM GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION

The Chapter 7 trustee, as plaintiff, has initiated this adversary proceeding to retain all of the net proceeds from the sale of the debtor's property located at 5154 Murfreesboro Road. Before the court is the trustee's motion for summary judgement seeking an order granting a judgement in her favor as a matter of law. For the reasons stated in this memorandum, the court finds that the trustee's motion should be granted.

### II. FINDINGS OF FACT

The following relevant facts are not in dispute. On February 1, 1987, H. Truman Gee (the debtor), Elizabeth P. Gee (the debtor's wife), and Wise Moving Company, Inc. (the debtor's business) entered into a Sales Agreement with Phillip E. Daniel (the defendant) and Daniel Moving & Storage, Inc. (Daniel's business). Under the agreement, the debtor and his wife agreed to transfer to Daniel a one-half interest in certain real property at 5154 Murfreesboro Road, being the location of Wise Moving Company. In exchange, Daniel agreed to make a cash payment of $22,300 and assume certain liabilities of Wise Moving Company.

The debtor did not execute or deliver a deed of conveyance granting Daniel the one-half interest in the property. Further, no instrument evidencing such conveyance was recorded in the Register's Office for Rutherford County, Tennessee, where the property was located. Nevertheless, subsequent to the agreement, Daniel took exclusive control over the property and paid the liabilities of Wise Moving Company assumed under the agreement.

On October 19, 1987, the debtor sued Daniel in Rutherford County Chancery Court to compel Daniel to consent to the sale of the property to a prospective buyer, Donelson

Associates. On November 12, Daniel removed the case to federal district court. On December 21, Daniel filed a counter complaint seeking to require the debtor and his wife to deliver a deed to the one-half interest in the property as agreed to in the Sales Agreement.

On May 9, 1989, the debtor and his wife divorced. On September 11, 1989, the debtor's wife quitclaimed her entire interest in the subject property to the debtor pursuant to their divorce decree.

On September 22, 1989, Daniel filed an Abstract of Counter Complaint with the Register of Deeds of Rutherford County. On October 2, Daniel also locally filed a Notice of Lien Lis Pendens. Through these filing, Daniel attempted to give notice of the relief he sought in the federal court counter complaint described above. On October 4, the debtor filed Chapter 11 bankruptcy.

The debtor initiated a complaint against Daniel on August 6, 1990 to obtain approval from the court to sell the property and distribute the proceeds. On October 15, 1990, the property was sold pursuant to an agreed order between the debtor and Daniel. The sale generated net proceeds of $138,221.11, which were placed in escrow. The final issue for resolution of this complaint was to determine how the sale proceeds should be distributed. On December 19, the court rendered a telephonic decision construing the Sales Agreement and ordering that its terms be enforced. As such, the court ordered that Daniel be paid $94,042.04 and the debtor the remaining $44,179.07.

On January 3, 1991, the case was converted to a Chapter 7, and J. Michael Combs was appointed trustee. On January 25, the debtor filed a motion to alter or amend the court's December 19th judgement. In an agreed order on March 8, the trustee and Daniel agreed that $87,000 would be released out of escrow to Daniel. The remainder of funds in escrow were to be paid over to the trustee. However, on March 21, the court ordered that all sale proceeds held in escrow be paid to the trustee until the claims of the trustee to these proceeds was resolved.

On May 13, 1992, the trustee filed a complaint against Daniel claiming that the trustee was entitled to retain all of the net sale proceeds. In April of 1993, Susan R. Limor was appointed trustee upon Combs' withdrawal. On August 23, 1993, Limor, as trustee, moved for summary judgment on all issues raised in the May 13 complaint.

### III. CONCLUSIONS OF LAW

#### A. Summary Judgement Standard

Bankruptcy Rule 7056 states that Federal Rule of Civil Procedure 56, governing summary judgments, applies in adversary proceedings. Rule 56 provides:

> The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c) (West 1993).

Rule 56(c) sets forth a two-pronged test. The first question is whether there is a genuine dispute regarding a fact that is material to the case. The second question is, if there is no factual dispute, whether the moving party is entitled to a judgment under the law.

The court finds no dispute regarding the material facts of this case as set forth above. Further, the court finds that the trustee is entitled to a judgement as a matter of law regarding the issues raised in the trustee's complaint.

#### B. Arguments

The trustee, as plaintiff, contends that prior to filing bankruptcy, the debtor never conveyed a one-half interest in the 5154 Murfreesboro Road property as he agreed to do in the Sales Agreement. Consequently, the debtor retained full ownership of the property at the time of his bankruptcy filing. The property thus became property of the bankruptcy estate upon the debtor's filing. Alternatively, the trustee argues that, if a conveyance did occur, the trustee has rights superior to those of Daniel pursuant to the avoidance powers of 11 U.S.C. § 544. The trust-

ee, therefore, is entitled to retain all of the net sale proceeds generated from the sale of the property.

Daniel, as defendant, contends that the debtor transferred a one-half interest in the property to him prior to the debtor's bankruptcy filing. Daniel argues that the Sales Agreement, the local filing of the Abstract of Counter Complaint and the Notice of Lien Lis Pendens, and his possession of the property effectively transferred this interest to him. Since this transfer took place pre-petition, Daniel's one-half interest did not become property of the bankruptcy estate. As such, Daniel claims that he should be paid the sale proceeds payable to him pursuant to this court's December 19, 1990 judgement and the March 8, 1991 agreed order.

### C. Discussion

■ The first issue entitled to summary judgment is whether the execution of the Sales Agreement, the local filing of the Abstract of Counter Complaint and the Notice of Lien Lis Pendens, and Daniel's possession of the property constituted a conveyance under Tennessee law. The court finds that a conveyance under Tennessee law did not occur between the parties.

■ In Tennessee, as in other states, land conveyances generally occur in a two step process: execution of a land sale contract followed by execution and delivery of a deed. In a land sale contract, a seller agrees in writing to convey specified real property to a buyer at a specified price. Statute of Frauds, Tenn.Code Ann. 29–2–101(a) (Supp. 1993). The actual conveyance of an ownership interest in the property, however, generally occurs by execution and delivery of a deed that satisfies the various formalities required by state statute. 9 Tenn.Jur.*Deeds* 7 (1993). First, being a "contract for the sale of lands," a deed must be in writing under Tennessee's Statute of Frauds. Tenn.Code Ann. 29–2–101(a) (Supp.1993); 9 Tenn.Juris.*Deeds* 7 (1993). Second, a deed must contain words showing the seller's intention to transfer an estate in fee to the buyer. 9 Tenn.Juris.*Deeds* 7 (1993); *see* Tenn.Code Ann. 66–5–103(1).

In the present case, no written instrument indicating the debtor's intention to convey the property to Daniel was ever executed. The only written document signed by both the debtor and his wife and Daniel was the February 1, 1987 Sales Agreement. In pertinent part, this agreement states,

"Said property is presently owned by the seller's principal stockholders, Truman Gee and his wife, Beth Gee. Seller shall execute the required deeds at closing." Paragraph 1(c).

"At the time of closing, Seller shall transfer to Buyer ... all of the assets enumerated in paragraph 1 [which included the real property at 5154 Murfreesboro Road]. On the demand of the Buyer, Seller shall execute and deliver any other documents necessary to give full effect to the terms of this agreement." Paragraph 2.

This clearly expresses an agreement to execute and deliver a deed at some time in the future that would convey an interest in the property. It is, however, not an expression of the debtor's present and actual intent to convey an interest in this property to Daniel. The Sales Agreement is thus in the nature of a land sale contract rather than a deed.

■ Likewise, the Abstract of Counter Complaint and the Notice of Lien Lis Pendens, although filed locally, were not deeds of conveyance. These documents were not expressions of the debtor's intent to convey property. They were rather Daniel's attempt to give notice of his claim to a one-half interest in the property.

Finally, in his affidavit dated May 13, 1993, Daniel admitted that the debtor never executed or delivered a deed to the property as promised under the Sales Agreement. Accordingly, the court finds that no conveyance of the property by way of a written deed ever occurred.

■ Another method by which real property can be conveyed in Tennessee is by operation of law. When a seller promises to convey land to a buyer, but later breaches that promise, a court can order the seller to convey the land to the buyer by specific performance.

Tennessee courts have ordered conveyance of land by specific performance in two situations. The first is where the seller breaches an enforceable land sale contract. 22 Tenn.Jur.*Specific Performance* 11 (1992). On December 21, 1987, prior to the debtor's bankruptcy, Daniel filed a counter complaint against the debtor and his wife in federal district court. Daniel sought a court order of specific performance ordering the debtor and his wife to convey a one-half interest in the property to Daniel as agreed to in the Sales Agreement. However, before the court could issue such an order, the debtor filed bankruptcy. Had the court ordered the debtor to convey Daniel a one-half interest in the property prior to bankruptcy, this court would have been faced with a different set of issues. Since the debtor filed bankruptcy prior to any such court order, the debtor's legal interest in the property was never disturbed by operation of law.

The second situation in which Tennessee courts have ordered a land conveyance by specific performance is where the seller is estopped from claiming that a land sale contract is unenforceable under the Statute of Frauds. *Baliles v. Cities Service Co.*, 578 S.W.2d 621, 624 (Tenn.1979). These cases involve circumstances in which a buyer takes possession of real property pursuant to some agreement that later is found to violate the Statute of Frauds. In the agreement, the seller promises to execute and deliver a deed conveying the property to the buyer. In reliance on the agreement, the buyer takes possession of the property and improves it in some way. The seller then seeks to evict the buyer from the property on the grounds that the agreement violates the Statute of Frauds and is thus unenforceable. *Id.* Applying the doctrine of equitable estoppel, Tennessee courts have held that the Statute of Frauds provisions should be mitigated under such circumstances and that the court should enforce the agreement by specific performance. *Id.*

The doctrine of equitable estoppel is not applicable in this case because the Sales Agreement was in every respect a valid and enforceable contract, as this court concluded in its December 19, 1990 judgement. Fur-

thermore, as shown above, since the debtor filed bankruptcy prior to any court order under the doctrine of equitable estoppel, the debtor's legal interest in the property remained undisturbed.

After examining the various methods by which real property can be conveyed in Tennessee, the court concludes that the combination of factors cited by Daniel do not constitute the conveyance of an interest in real property. There is quite simply no precedent in Tennessee law under which a conveyance could have occurred under such circumstances.

### D. Conclusion

For the foregoing reasons, the court concludes that as of the date of his bankruptcy filing, none of the debtor's ownership interest in the 5154 Murfreesboro Road property was ever conveyed to Daniel. At all times prior to their divorce, debtor and his wife were full owners of the property. After the debtor's wife quitclaimed her one-half interest to the debtor pursuant to their divorce, the debtor retained a full, 100%, undivided ownership interest in the property. This ownership constituted a "legal interest" in all of the property under 11 U.S.C. § 541(a)(1). Consequently, 100% of the Murfreesboro Road property became property of the bankruptcy estate upon filing. All net proceeds generated from the sale of the property also should be property of the bankruptcy estate.

Accordingly, the court concludes that the trustee may retain all of the net sale proceeds generated by the sale of the property. Such proceeds are currently held by the trustee pursuant to the March 21, 1991 Order, which paid all proceeds held in escrow to the trustee pending resolution of this complaint.

### IV. OTHER ISSUES

The trustee raised several other issues in the motion for summary judgement: (1) if a conveyance did occur, can the trustee avoid this transfer as a unrecorded conveyance under 11 U.S.C. § 544, (2) whether the doctrines of res judicata, collateral estoppel, or laches bars the trustee's actions in the pres-

ent complaint, and (3) whether the trustee can recover rents from Daniel's occupancy of the property. The first issue need not be addressed because the court has held that no conveyance occurred. Daniel's attorney conceded the second issue in the May 18, 1993 hearing on the Trustee's summary judgement motion and thus should be resolved favorably to the trustee. The third issue, dealing with rents, was never raised in the original complaint. The May 13, 1992 complaint asserted only a claim to the net sale proceeds, not a claim to rents. As such, the court finds that disposition of this issue by summary judgement would be inappropriate at this time.

IT IS SO ORDERED.