NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0365n.06

No. 21-6023

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 07, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DEAUNDRA BILLINGSLEY, | ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JOHN DOE #1, | ) | |
| Defendant, | ) ) | OPINION |
| | ) | |
| PRENTISS JOLLY; MICHAEL W. RALLINGS; | ) | |
| CITY OF MEMPHIS; CHRISTOPHER TRACY; | ) | |
| JUSTIN VAZEII, | ) | |
| Defendants-Appellees. | ) ) | |

Before: GUY, MOORE, and CLAY, Circuit Judges.

CLAY, J., delivered the opinion of the court in which MOORE, J., joined. GUY, J. (pp. 16–22), delivered a separate dissenting opinion.

CLAY, Circuit Judge. Plaintiff Deaundra Billingsley appeals the district court's order granting the motion to dismiss of Defendants City of Memphis ("the City"), and Officers Christopher Tracy, Justin Vazeii, Prentiss Jolly, and Michael Rallings in this 42 U.S.C. § 1983 case alleging federal and state civil-rights violations by two on-duty police officers of the Memphis Police Department ("MPD"). Plaintiff's motion to dismiss Defendant Vazeii as a party on appeal is also pending before this Court. For the reasons set forth below, this Court **VACATES** the district court's order granting the motion to dismiss and **REMANDS** for further proceedings consistent with this opinion. This Court also **GRANTS** Plaintiff's motion to dismiss Defendant Vazeii as a party on appeal.

## I.    BACKGROUND

### A.  Factual Background

This civil rights action finds its origins in a July 31, 2019 incident in which Plaintiff alleged that two uniformed police officers—Defendants Tracy and Vazeii—"accosted and detained him, searched his person without probable cause or reasonable suspicion" before Officer Tracy is said to have forcibly penetrated Plaintiff in the anus via an anal cavity search.  (Am. Compl., R. 21, PageID # 52).  Plaintiff alleges that on that date, he was walking down a residential street in the Binghampton neighborhood in Memphis, Tennessee when he encountered his friend's son, identified as D.M.  The two stopped to chat, and a MPD-patrol car stopped near the pair.  Officers, Defendants Tracy and Vazeii, are said to have jumped out of their patrol car and ordered Plaintiff and D.M. to put their hands on the hood of the vehicle.  Tracy detained and patted down Plaintiff while Vazeii searched D.M.  Officer Vazeii then placed a small bag of what appeared to be cannabis on the hood of the patrol car, claiming he recovered it from D.M.'s person.  At about the same time, Tracy handcuffed Plaintiff's hands behind his back and, in full public view, pulled down Plaintiff's pants, reached a hand inside his undershorts, and rubbed his hands over Plaintiff's buttocks before forcibly inserting one or two fingers into Plaintiff's anus.  Plaintiff maintains that this constituted rape under Tenn. Code Ann. §§ 39-13-501(7), 503(a)(1), (2).  Plaintiff recalls Vazeii asking Tracy, "Did you check his asshole good?"  (*Id.* at PageID # 59).

Tracy forced Plaintiff down to the curb, where Plaintiff remained for an hour.  Plaintiff claims that throughout this encounter, he objected to and questioned the detainment.  At one point, Vazeii allegedly warned Plaintiff that he had "better stop talking" and then pointed to the bag of purported cannabis to warn Plaintiff, "I can write this up how I want to write it, make it however I want to make it."  (*Id.* at PageID ## 59–60).  According to Plaintiff, Officer Tracy then tapped

his body camera as if to remind Vazeii that the incident was being recorded. After about another hour, the officers released Plaintiff and are said never to have asked for Plaintiff's name. D.M. was also released without charge.

The next day, August 1, 2019, Plaintiff filed a report with the MPD Inspectional Services Bureau ("ISB") to report the incident via a citizen complaint ("ISB complaint"). Plaintiff made no contemporaneous personal record of the date on which this encounter occurred, and, following the incident, it is asserted that Plaintiff suffered emotional distress and trauma from the July 31 incident that caused him to forget certain details—including, critically for present purposes—the date it occurred.

In the weeks and months that followed the encounter, Plaintiff "repeatedly tried—on at least four or five separate occasions—to obtain from the Inspectional Services Bureau any and all records related to his citizen complaint, including" a copy of the complaint itself. (*Id.* at PageID # 61). ISB is said to have denied these requests because Plaintiff needed to be represented by an attorney before it would speak further or release any information to him. By the time Plaintiff retained counsel in June 2020, it is asserted that he believed the stop-and-frisk incident occurred in mid-to-late August 2019; it bears remembering that the incident actually occurred on July 31, 2019. His counsel, who was told by Plaintiff that the incident happened in mid-to-late August 2019, continued his client's attempts to obtain a copy of Plaintiff's ISB statement from the City of Memphis but fared no better.

Allegations in the amended complaint aver that the City, through the MPD, deliberately concealed or misrepresented information material to Plaintiff's claim, including the date of the incident, i.e., when the statute of limitations began to run. The City is alleged to have concealed this information in various ways, such as telling Plaintiff's counsel to arrive at the ISB office in

person when no ISB personnel would be there and, in a June 2020 phone call, "tacitly confirm[ing] [to counsel] that the incident had occurred in mid or late August 2019." (*Id.* at PageID # 85). Plaintiff's counsel made a public records request to the City on June 30, 2020, seeking "[a]ny and all documentation from, concerning, or reasonably pertinent to [MPD's] investigation . . . of [the] stop-and-frisk incident." (*Id.* at PageID # 62).[1] A MPD lieutenant replied to the request on July 10, 2020, stating that "there are no existing responsive records to your request" and thus denied the request.[2] (*Id.* at PageID # 91).

---

[1] In full, the June 30, 2020 public records request sought:

Any and all documentation from, concerning, or reasonably pertinent to the Memphis Police Department's (the "MPD's") Internal Affairs Division investigation initiated by the internal-affairs complaint initiated by Deaundra Billingsley of Shelby County, Tennessee at some time between July 1, 2019 and September 15, 2019. Mr. Billingsley's internal-affairs complaint concerned a stop-and-frisk incident that had occurred in the days or weeks preceding the complaint. The incident was initiated by two unknown named officers of the MPD at or around the intersection of Read Oak Street and Mimosa Avenue in the Binghampton neighborhood. This request specifically includes, but is in no way limited to, the entire investigative file associated with Mr. Billingsley's complaint, as well as any recorded statements by any person in relation to the above described incident and any notes, memoranda, conclusions, findings, or other materials arising out of or reasonably related to the investigation of Mr. Billingsley's complaint.

(Am. Compl., R. 21, PageID # 62).

[2] In full, this message stated:

The City received a public records request from you on 6/30/2020. Your request mentioned "Any and all documentation from, concerning, or reasonably pertinent to the Memphis Police Department's ("MPD's") Internal Affairs Division investigation initiated by the internal-affairs complaint initiated by Deaundra Billingsley of Shelby County, Tennessee at some time between July 1, 2019 and September 15, 2019. Mr. Billingsley's internal-affairs complaint concerned a stop-and-frisk incident that had occured [sic] in the days or weeks preceding the complaint. The incident was initiated by two unknown named officers of the MPD at or around the intersection of Read Oak Street and Mimosa Avenue in the Binghampton neighborhood. This request specifically includes, but is in no way limited to, the entire investigative file associated with Mr. Billingsley's complaint, as well as any recorded statements by any person in relation to the above-described incident and any notes, memoranda, conclusions, findings, or other materials arising out of or reasonably related to the investigation of Mr. Billingsley's complaint."

On July 28, 2020, the ISB closed its investigation into Plaintiff's citizen complaint, three days before the one-year limitations period was set to end; the City "sustained" a finding of "neglect of duty" against Officers Tracy and Vazeii arising from the July 31, 2019 incident. To relay that finding, the City transmitted a letter to Plaintiff, which began: "On August 1, 2019[,] [Plaintiff] filed a complaint against Officers Christopher Tracy and Justin Vazeii." (Letter, R. 21-4, PageID # 94). The letter thus indicated that the stop-and-frisk incident had not occurred in August 2019, as Plaintiff and, as a result, his counsel, mistakenly believed. Although this letter clarified the date the incident occurred, neither Plaintiff nor his counsel received it until August 19, 2020, nearly three weeks after the limitations period expired. (Am. Compl., R. 21-1, PageID ## 63, 85).

The crux of Plaintiff's argument is that he would have filed his lawsuit no later than July 31, 2020, but for the acts or omissions by the City, including withholding Plaintiff's ISB complaint despite repeated requests by Plaintiff and his attorney; withholding responsive documents related to Plaintiff's ISB complaint, even after counsel filed the public records request; slow-walking the processing of the ISB report until three days before one year had passed from the date of the incident; and making no effort to contact Plaintiff or his attorney before the statute of limitations expired, despite the then-still pending open-records request. Plaintiff argues that the City's actions were the but-for cause of Plaintiff's untimely filing. Based on these allegations, Plaintiff alleges he did not discover the exact date the alleged assault occurred due to Defendants' actions to conceal

---

The City has reviewed its files and has determined there are no existing responsive records to your request. **Per the custodian, the case file is not closed. This is still an open investigation.** This completes your public records request with the City of Memphis."
(Am. Compl., R. 21, PageID # 62).

or misrepresent material facts, thereby excusing his filing five days outside of the one-year statute of limitations period. (*Id.* at PageID # 71).

## B. Procedural History

Plaintiff filed suit on August 5, 2020 against Defendants unnamed officers John Doe I, John Doe II, Officer Michael Rallings, and the City of Memphis. The original complaint incorrectly stated that the stop-and-frisk incident occurred "on or after August 5, 2019." (Compl., R. 1, PageID # 5). On September 16, 2020, Plaintiff filed an amended complaint against Defendants City of Memphis and Officers Christopher Tracy, Justin Vazeii, Prentiss Jolly, and Michael Rallings, alleging that Defendants violated Plaintiff's federal civil rights and committed various state law torts against him. Importantly, the amended complaint correctly asserted that the incident occurred on July 31, 2019. While Plaintiff admitted that he missed the one-year statute of limitations to bring these claims against Defendants, he asserted that equitable grounds existed for tolling the statute of limitations. Defendants filed a motion to dismiss for failure to state a claim, contending, as is relevant to the instant appeal, that they could not be equitably estopped from asserting the statute of limitations as a defense to suit. The district court granted Defendants' motion to dismiss, and Plaintiff's timely appeal followed.[3]

---

[3] On appeal, Defendants City of Memphis, Prentiss Jolly, and Michael Rallings proceed under one brief. Defendant Tracy has not yet been served and thus did not present arguments on appeal. (*See* Def. Vazeii's Br., ECF No. 38 at 8 ("Officer Tracy has yet to be served in this case.")). Defendant Vazeii filed a separate appellate brief, contending that Plaintiff's amended complaint is time-barred under the statute of limitations and not subject to equitable estoppel. Even if it were not time-barred, Vazeii argues that Plaintiff's amended complaint (which identified Officers Vazeii and Tracy by name) does not "relate back" under Rule 15(c) of the Federal Rules of Civil Procedure to the original complaint (which did not name those officers by name). In Plaintiff's appellate reply brief, he withdraws his appeal with respect to Officer Vazeii, conceding that "the Amended Complaint does not relate back[.]" (Reply Br., ECF No. 47 at 2 ("Plaintiff communicated this position to opposing counsel for Officer Vazeii on April 26, 2022 and will take appropriate steps to perfect the dismissal of this part of his appeal . . . . Plaintiff continues to press

## II.    DISCUSSION

### A.  Standard of Review

This Court reviews *de novo* a district court's decision to grant a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To state a claim, a complaint must contain a "short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it must assert sufficient facts to provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.  Any "complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

### B.  Analysis

#### 1.  *Tennessee's One-Year Statute of Limitations for § 1983 Claims*

"Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, 'federal courts must borrow the statute of limitations governing personal injury actions in the state in which the [§] 1983 action was brought.'" *Buck v. City of Highland Park*, 733 F. App'x 248, 252 (6th Cir. 2018) (quoting *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)).  State law, Tennessee, in this case, governs Plaintiff's tolling claims.  *Bd. of Regents v. Tomanio*,

his appeal with respect to Defendant [City of Memphis.")).  The motion to dismiss Defendant Vazeii  is pending before this Court.

446 U.S. 478, 484–85 (1980). "In Tennessee, the statute of limitations for actions pursuant to 42 U.S.C. § 1983 is one year." *Montgomery v. Carter Cnty.*, 226 F.3d 758, 772 (6th Cir. 2000). Tenn. Code Ann. § 28-3-104(a)(3).

Tennessee recognizes the doctrine of equitable estoppel; where applicable, it excuses a plaintiff's failure to timely file suit. "In the context of a defense predicated on a statute of limitations, the doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). The party asserting estoppel must prove that the party to be estopped: (1) engaged in "[c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;" (2) had knowledge, actual or constructive, of the real facts; and (3) acted with the intent or at least the expectation that its representation or concealment would be acted on by the other party. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 315–16 (2009).

The party asserting estoppel must also prove that he: (1) relied on the false representation or concealment; (2) changed his position to his prejudice; and (3) lacked knowledge and the means of acquiring knowledge of the truth as to the facts in question. *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990). In some circumstances, estoppel may be based on a party's affirmative misrepresentation or their "silence or negative omission." *Baliles v. Cities Serv. Co.*, 578 S.W.2d 621, 624 (Tenn. 1979) (citation omitted); *Evans v. Belmont Land Co.*, 92 Tenn. 348, 365 (1893). Courts applying Tennessee's doctrine of equitable estoppel usually approach the task holistically rather than going factor-by-factor, *see, e.g.*, *Redwing*, 363 S.W.3d at

464–65; and, in the instant dispute, the salient question is whether Plaintiff has shown Defendants misrepresented or concealed a material fact, and the extent to which Plaintiff relied on that misrepresentation or concealment.

### 2. *Application to the Instant Case*

"[W]hen the face of a complaint makes it apparent that the time limit for bringing the claim has expired, plaintiff must affirmatively plead why the violations were not discovered earlier and why the statute of limitations should be tolled." *Reid v. Baker*, 499 F. App'x 520, 426 (6th Cir. 2012). In this case, Plaintiff filed his initial complaint on August 5, 2020, and his amended complaint on September 16, 2020. The events giving rise to this case occurred on July 31, 2019. It is clear from the face of the amended complaint that Plaintiff did not timely file his complaint, and he must plead an exception to the limitations period to avoid dismissal. In ruling on Defendants' motion to dismiss, the district court made two holdings. First, it credited Defendants' argument that Plaintiff failed to adequately plead equitable estoppel in the amended complaint. Second, the court held that even if Plaintiff had properly pled the doctrine, he nevertheless failed to state a prima facie case for equitable estoppel. We take each in turn.

### a. *Sufficiency of the Pleading*

First, the district court found that Plaintiff failed to plead equitable estoppel in the amended complaint. On appeal, Plaintiff admits the term "equitable estoppel" does not appear within the four corners of the amended complaint; nevertheless, he argues that he pled equitable estoppel therein. While the amended complaint does not use the term "equitable estoppel," it does contend at length and in great detail the "exist[ence] [of] substantial equitable grounds for tolling the statute of limitations." (Am. Compl., R. 21, PageID # 53). The district court's conclusion that the amended complaint's discussion of "equitable grounds for tolling" pled only equitable tolling and

not equitable estoppel appears to rest on a misapprehension of law. Tennessee law recognizes various tolling doctrines, including the doctrine of equitable estoppel; this doctrine is a tolling doctrine that tolls the running of the statute of limitations. *Redwing*, 363 S.W.3d at 460 ("[W]e have recognized and applied the doctrines of equitable estoppel and fraudulent concealment to toll the running of the statute of limitations."). Thus, the amended complaint's reference to and discussion of "equitable grounds for tolling" encompasses the tolling doctrine of equitable estoppel. *Id.*; *see Howard v. Rea*, 111 F. App'x 419, 421 (6th Cir. 2004). Accordingly, the district court erred when it found that Plaintiff pled only equitable tolling and not equitable estoppel.

### b. *Prima Facie Case of Equitable Estoppel*

Second, the district court found that even if Plaintiff raised the doctrine of equitable estoppel in the amended complaint, he nevertheless failed to plead a prima facie case. Specifically, it found that Plaintiff did not allege sufficient facts that showed Defendants misrepresented or concealed a material fact and, furthermore, that Plaintiff had not alleged that he reasonably relied on any misrepresentation or concealment made by Defendants. On appeal, the question is whether Plaintiff's amended complaint made out a prima facie case of equitable estoppel because Plaintiff's filing of the complaint outside of the one-year statute of limitations was the result of the City's acts of misrepresentation or concealment. At the motion to dismiss stage, this Court cannot yet say that there is no set of facts on which Plaintiff would be able to make the required showing. For the following reasons, this Court will vacate the district court's order and remand to permit discovery on the question of equitable estoppel.

### i. *Misrepresentation or Concealment of Material Facts*

The first basis of the district court's holding was that "Plaintiff has failed to allege sufficient facts that show Defendants misrepresented or concealed a material fact." (Order, R. 58, PageID #

474). Our review of the record leads to a different conclusion. The gravamen of the amended complaint is as follows:

> [T]he MPD refused to provide Mr. Billingsley or his counsel with the transcript of Mr. Billingsley['s] citizen complaint[,] deliberately and purposefully to conceal from Mr. Billingsley certain material facts, including . . . the fact that Mr. Billingsley had an actionable civil-rights claim, the exact date on which Mr. Billingsley's cause of action had accrued, and the fact his citizen complaint had been sustained on the merits, until it was too late for him to reasonably file an action inside the one-year statute of limitations.

(Am. Compl., R. 21, PageID ## 71–72). We begin by reviewing the factual allegations claimed to justify applying equitable estoppel.

The amended complaint maintains that the City "slow-walked" the processing of the citizen complaint in order to conceal from Plaintiff the date his cause of action accrued. For instance, Plaintiff submits that the City completed its substantive investigation into the matter in late 2019 but did not close the inquiry until July 28, 2020, just three days before the filing deadline applicable for civil rights claims. Plaintiff additionally alleges that the MPD "deliberate[ly] . . . refus[ed] to release the transcript of Mr. Billingsley's August 1, 2019 statement . . . despite repeated requests." (*Id.* at PageID # 73). It was not until nineteen days after the limitations period expired, on August 19, 2020, that counsel received a transcribed statement of Plaintiff's citizen complaint, which indicated that the stop-and-frisk encounter occurred in late July 2019 (not mid-August, as Plaintiff incorrectly believed). After multiple unreturned phone calls, the only time Plaintiff's counsel was able to speak with an ISB investigator came on June 25, 2020; in that call, the ISB representative "indicated familiarity with Plaintiff's ISB report" and "appeared to tacitly confirm [to counsel] that the incident had occurred in mid or late August 2019." (*Id.* at PageID # 85). If these allegations are borne out, it could be shown that the City sought "to convey the impression that the facts [were] otherwise than" they are. *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774

(Tenn. 2004); *see Church of Christ v. McDonald*, 171 S.W.2d 817, 821 (reasoning equitable estoppel can apply "where by intentional concealment of facts[,] [a party] has induced another to act to his prejudice")).

Moreover, the City denied Plaintiff's June 30, 2020 open-records request, stating that "there are no existing responsive records." (Am. Compl., R. 21, PageID # 53). Plaintiff alleges that there was no lawful basis for the City's denial of the open-records request and that the City mishandled it by stating the records were exempt from disclosure under Tenn. Code Ann. § 10-7-503(a)(2)(B) when they were, in fact, disclosable and the City had a duty to produce them. Plaintiff asserts that the City's refusal to provide responsive documentation was pretextual, made to conceal the date the cause of action accrued. Accordingly, Plaintiff has argued that Defendant engaged in the type of deceptive or misleading behavior necessary to make out a claim of equitable estoppel. *McDonald*, 171 S.W.2d at 821 ("Silence, failure to act, or acquiescence may be sufficient to invoke equitable context where, in context, they reasonably misled another.").

If proven, these allegations could be a basis for invoking equitable estoppel, particularly insofar as the amended complaint avers that "[t]he City also knew that, if it could prevent Mr. Billingsley from filing an action prior to July 31, 2020, it could plead Tennessee's one-year statute of limitations on civil-rights claims as a defense to any action Mr. Billingsley might subsequently bring." (Am. Compl., R. 21, PageID # 70). *See also Walburn v. Lockheed Martin Util. Servs.*, 443 F. App'x 43, 50 (6th Cir. 2011) (Moore, J., dissenting) ("Because the Walburns' complaint, construed in the light most favorable to them, alleges the kind of misrepresentation recognized by Ohio courts as a basis for equitable estoppel, it should survive the motion to dismiss."). Ultimately, Plaintiff may or may not be able to meet this burden; but deciding that question without allowing the parties to proceed to discovery would be premature given the plausibility pleading standard

applicable to appellate review on a motion to dismiss. When considered together and taken as true, the allegations in the amended complaint set forth the kind of misrepresentation or concealment of material information that Tennessee courts recognize as a basis for equitable estoppel, such that it survives a motion to dismiss. *Cf. Cheatom v. Quicken Loans*, 587 F. App'x 276, 280 (6th Cir. 2014) (rejecting claim of equitable estoppel where plaintiff did "not specify or allege any wrongful actions or concealment" by defendant).[4]

*ii. Reliance*

The second basis of the district court's holding was: "Plaintiff's Amended Complaint lacks any allegations related to his reliance on Defendants' conduct." (Dist. Ct. Order, R. 58, PageID # 477).[5] On the contrary, the amended complaint sets forth sufficient factual allegations that Plaintiff relied on the conduct of the party to be estopped. The amended complaint avers:

> But for the MPD's deliberate, improper, and illegal refusal to release the transcript of [Plaintiff's] August 1, 2019 [citizen complaint] . . . the denial of counsel's June 30,

---

[4] With regard to whether Plaintiff has made out a prima facie case of conduct amounting to a false representation or concealment of material facts, it should be noted that the district court opinion contains a footnote that misstates the record. (Dist. Ct. Order, R. 58, PageID # 477, n.6). In a July 10, 2020 correspondence from the City to Plaintiff's counsel, the City noted that Plaintiff's citizen complaint had been filed "at some time between July 1, 2019 and September 15, 2019," and that the "stop-and-frisk incident . . . occurred in the days or weeks preceding the Complaint." (*Supra* notes 1–2). The district court found that this communication "suggest[ed] the City attempted greater transparency" and thus "weigh[ed] against concealment." (Dist. Ct. Order, R. 57, PageID # 477, n.6 ("The City explained in th[e] . . . correspondence that Plaintiff's Complaint had been filed 'at *some time between July 1, 2019 and September 15, 2019. Mr. Billingsley's internal affairs complaint concerned a stop-and-frisk incident that occurred in the days or weeks preceding the Complaint*.'" (emphasis added))). However, the material the district court quoted, beginning with "at some time between July 1, 2019 and September 15, 2019," comes from Plaintiff's counsel's open records request. Thus, in finding the letter from the City "suggest[ed] the City attempted greater transparency," the district court misattributed the source of the quoted material to the City, when it was simply the City quoting Plaintiff's open records request. (Public Records Request, R. 21-3, PageID # 91).

[5] On appeal, Plaintiff argues that he was not required to plead reliance to establish an equitable estoppel prima facie case at all. This argument is waived because Plaintiff did not make this argument below. *Colonial Life & Accident Ins., Co. v. Estate of Stewart*, 819 F. App'x 318, 321 (6th Cir. 2020) ("This court does not consider issues raised for the first time on appeal.").

2020 open-records request, . . . [and] the MPD's . . . keeping open the file associated with [Plaintiff's] citizen complaint long after completing all substantive review associated with the same, [Plaintiff] and counsel would have been on reasonable notice of the date on which the above-described events took place and would have filed the original complaint in this action no later than July 31, 2020.

(Am. Compl., R. 21, PageID ## 73–74; *id.* at PageID # 85 ("Had I known the incident in question occurred on July 31, 2020, I would have filed the original complaint in this action on or before that date.")). "These allegations, if proven true, establish the doctrine of equitable estoppel," *Fahrner*, 48 S.W.3d at 145 (internal quotation marks omitted), because Plaintiff would be able to make out a claim that Defendants concealed the date of the incident, or otherwise misrepresented the date the incident occurred, thereby resulting in his untimely filing. If Plaintiff can make out these allegations, he could demonstrate that Defendant's conduct caused him to delay bringing suit. *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010) ("Bloemker has alleged facts that could fulfill all of these requirements; therefore, dismissal of his estoppel claim was not appropriate.").

In sum, "[b]ecause the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quotation omitted). Because Plaintiff alleges that, but for the City's deliberate concealment of the date of the incident, Plaintiff's counsel would have filed five days earlier, and thus within the statute of limitations period, it is conceivable, through discovery, that Plaintiff's allegations could be proven. *United States v. Adams*, 870 F.2d 1140, 1141 (6th Cir. 1989) ("The case will be remanded to permit such discovery."); *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 235 (1959) (citation another source) ("It may well be that petitioner's complaint as now drawn is too vague, but that is no ground for dismissing his action. Whether petitioner can in fact make out a case calling for

application of the doctrine of estoppel must await [further proceedings].").  Absent discovery on whether Plaintiff is entitled to equitably estop Defendants from asserting the statute of limitations as a defense, it is premature to dismiss Plaintiff's civil rights suit.  *Davis v. Goldstein*, 563 F. App'x 800, 803 (2d Cir. 2014) (remanding for additional discovery "[a]t the motion to dismiss stage" where "absent discovery . . . [the plaintiff] had no facts with which to disprove" the defendant's statute of limitations defense).  We vacate the district court's order and remand for discovery concerning the timeliness of the claim.

### III.  CONCLUSION

For the reasons set forth above, we **VACATE** the order of the district court and **REMAND** for further proceedings consistent with this opinion.  We also **GRANT** Plaintiff's motion to dismiss Defendant Vazeii as a party on appeal.

RALPH B. GUY, JR., Circuit Judge, dissenting. The only question here is whether Billingsley has plausibly alleged facts to establish that Tennessee's doctrine of equitable estoppel precludes defendants from asserting their statute of limitations defense. He is not entitled to such relief. The majority opinion relies on Tennessee's equitable estoppel principles in the context of *private parties*. What the opinion conspicuously fails to mention is that under Tennessee law, "public agencies are not subject to equitable estoppel to the same extent as private parties, and exceptional circumstances are required to invoke the doctrine against the state and its governmental subdivisions." *Carpenter v. State*, 838 S.W.2d 525, 528 (Tenn. 1992) (citing *Bledsoe County v. McReynolds*, 703 S.W.2d 123, 124 (Tenn. 1985)); (Appellee Br. 22, 23, 28).

Billingsley was required to allege "*affirmative action* that clearly induced [him] to act to his . . . detriment, as distinguished from *silence, non-action, or acquiescence*." *Carpenter*, 838 S.W.2d at 528 (emphasis added). But Billingsley has merely alleged that he requested information and the police department was silent and failed to remind him of the date when he was allegedly assaulted by police officers. One will search the complaint in vain for any affirmative "misrepresentation." *But see* (Maj. Op. 3, 10, 12-14). Billingsley's "erroneous assumption" as to "the date of the incident" is not a basis for equitable estoppel because Billingsley was "present at the time of the alleged injury" and, by all accounts, a government official never affirmatively misrepresented the date of Billingsley's arrest. *Brashears v. City of Knoxville Police Dep't*, 1999 WL 93582, at *4 (Tenn. App. 1999). To conclude otherwise requires altering Tennessee law and adding allegations that do not appear in the complaint. Because that is not appropriate, I would affirm.

The "accrual date of a § 1983 cause of action is a question of federal law," but the "statute of limitations . . . is that which the State provides for personal-injury torts," and we apply "state law for tolling rules." *Wallace v. Kato*, 549 U.S. 384, 387-88, 394 (2007).

There is no dispute that Billingsley's lawsuit is subject to Tennessee's one-year statute of limitations for tort actions. Tenn. Code. Ann. § 28-3-104(a)(1)(B); (Appellant Br. 3; Reply Br. 3; Appellee Br. 3-4). And all agree that Billingsley's claims accrued, and thus the limitations period began, on July 31, 2019. But Billingsley filed suit on August 5, 2020—five days *after* the one-year deadline expired. Thus, this action is time-barred unless Billingsley is entitled to some form of tolling under Tennessee law. The court's opinion agrees on that much. (Maj. Op. 9).

Once defendants showed "it is apparent from the face of the complaint that the time limit for bringing the claim[s] has passed," Billingsley's "obligation to plead facts in avoidance of the statute of limitations defense is triggered." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). That means here, the complaint must contain factual "allegations" establishing that "the statute of limitations should be tolled." *Id.* (cleaned up); *see also, e.g.*, *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013); *Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987).

The Tennessee Supreme Court, "unlike other state courts and the federal courts," has "declined to recognize the doctrine of equitable tolling in civil cases." *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). Instead, Tennessee "recognize[s] and applie[s] the doctrines of equitable estoppel and fraudulent concealment to toll the running of the statute of limitations." *Id.* Billingsley invokes equitable estoppel.

"[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940); *see also Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004).

In the statute-of-limitations context, the last word on equitable estoppel from the Tennessee Supreme Court is stated in *Redwing*. For a court to apply equitable estoppel, the plaintiff must allege that: (1) "the defendant induced [the plaintiff] to put off filing suit"; (2) the defendant did so through "specific promises, inducements, suggestions, representations, assurances, or other similar conduct"; and (3) "the defendant knew, or reasonably should have known," that such representations "would induce the plaintiff to delay filing suit." *Redwing*, 363 S.W.3d at 460. Billingsley must also allege that the "delay in filing suit was not attributable to [his] own lack of diligence." *Id.* (quoting *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)); *accord Mott v. Luethke*, 633 S.W.3d 585, 597 (Tenn. Ct. App. 2021).

On top of that, Billingsley faces a steeper climb here because "public agencies are not subject to equitable estoppel to the same extent as private parties, and exceptional circumstances are required to invoke the doctrine against the state and its governmental subdivisions." *Carpenter*, 838 S.W.2d at 528. Billingsley must allege "affirmative action that clearly induced [him] to act to his . . . detriment, as distinguished from silence, non-action, or acquiescence." *Id.*

Billingsley's allegations miss the mark at each point along the timeline of events. He was allegedly accosted by police officers on July 31, 2019. (R. 21, ¶ 11). The next day (August 1), Billingsley reported the incident to the police department's Investigation Services Bureau (ISB). (*Id.*, ¶ 40). In the months that followed, Billingsley unsuccessfully "tried—on at least four or five

separate occasions—to obtain from ISB any and all records related to his citizen complaint, including a printed or recorded copy of the statement he had made to ISB regarding the incident." (*Id.*, ¶ 42). ISB's "silence, non-action, or acquiescence" is not enough for equitable estoppel. *Carpenter*, 838 S.W.2d at 528.

It was not until June 16, 2020, that Billingsley retained counsel. (R. 21-1, ¶ 2; R. 21, ¶ 96 (incorporating counsel's declaration)). On June 25, 2020, counsel called ISB and said he "believed the incident in question had occurred in mid or late August 2019." (R. 21-1, ¶¶ 12-13). "The (apparent) detective *never corrected [counsel]* about the date on which the incident in question had occurred, but told [counsel] he was familiar with the case and that it was still open. He said he would not release any information to [counsel] over the phone . . . but he would possibly be willing to confirm certain details if [counsel] came by the ISB office in person." (*Id.*, ¶ 13 (emphasis added)). ISB was not taking any in-person appointments. *Id.*

From this, counsel claims, "I interpreted the ISB *employee's silence to tacitly* confirm my belief that the incident had occurred in mid or late August, 2019." (*Id.*, ¶ 22). This majority's opinion, however, omits all the words before "tacitly." (Maj. Op. 4, 11). Counsel's assertion is the closest Billingsley comes to alleging an "affirmative" misrepresentation. *Carpenter*, 838 S.W.2d at 528. But ISB's alleged conduct is nothing more than "silence, non-action, or acquiescence." *Id.*

On June 30, counsel went to the ISB offices, but no one answered. (R. 21-1, ¶ 14). That same day, counsel submitted a public records request, seeking:

> Any and all documentation from, concerning, or reasonably pertinent to the Memphis Police Department's (the "MPD's") Internal Affairs Division investigation initiated by the internal-affairs **complaint initiated by Deaundra Billingsley of Shelby County, Tennessee at some time between July 1, 2019 and September 15, 2019**. Mr. Billingsley's internal-affairs complaint concerned a

> stop-and-frisk **incident that had occurred in the days or weeks preceding the complaint**.

(R. 21, ¶ 46 (emphasis added); *see also* R. 21-1, ¶ 15; R. 21-3 (email)).

That statement reveals that on June 30, counsel knew there was a possibility that the incident in question occurred *before* July 1, 2019. *See Brashears*, 1999 WL 93582, at *4. Nonetheless, Billingsley did not need to pinpoint the specific date of the incident (or even the names of the officers) to file suit. He could have filed suit naming John Doe officers as defendants and stating when he believed the incident occurred, and then he could have amended the complaint "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). In fact, Billingsley did just that when he filed his initial complaint on August 5, 2020 (R. 1, ¶¶ 8-14), and later amended it on September 16, 2020 (R. 21, ¶ 11). Billingsley (and his counsel) wasted time chasing information that was not needed to file suit. This goes to show that Billingsley is not entitled to equitable estoppel because the "delay in filing suit" was "attributable to [his] own lack of diligence." *Redwing*, 363 S.W.3d at 460 (cleaned up).

On July 10, 2020, the City responded to the records request: "The City has reviewed its files and determined there are no existing responsive records to your request. Per the custodian, the case file is not closed. This is still an open investigation." (R. 21, ¶ 48; *see* R. 21-3 (City's email attached to the complaint)). In a letter dated July 28, 2020, the City informed Billingsley that the officers violated police policies and that he had filed a citizen complaint *on August 1, 2019*. (R. 21, ¶ 50; R. 21-4). Eight days later, Billingsley filed suit on August 5, 2020. (R. 1).

Yet Billingsley asserts "[u]pon information and belief, [that] ISB had completed all substantive review in connection with Mr. Billingsley's citizen complaint . . . no later than December 31, 2019." (R. 21, ¶ 82). Although that is a factual statement, it is a "naked assertion" devoid of "further factual enhancement," and so it is not assumed to be true. *Ashcroft v. Iqbal*,

556 U.S. 662, 678-79, 681 (2009) (cleaned up). Billingsley also makes the bald assertion that there was "no lawful basis for denying [his] counsel's June 30, 2020 public records request." (R. 21, ¶ 86). But that is a "legal conclusion," and so it too is "not entitled to be assumed true." *Iqbal*, 556 U.S. at 678-79 (cleaned up). Billingsley has not shown the City was legally obligated to turn over the records while its investigation was ongoing. In any event, the City's alleged delay in turning over the records merely constitutes "silence, non-action, or acquiescence." *Carpenter*, 838 S.W.2d at 528.

Although this court's opinion concludes that these allegations entitle Billingsley to discovery under pre-*Iqbal* precedent, *see* (Maj. Op. 11-15), under today's pleading standard Billingsley cannot "unlock the doors of discovery . . . armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

To the extent Billingsley also alleges that the trauma from the incident interfered with his ability to accurately remember details of the incident, "such as the calendar date on which it occurred," (R. 21, ¶¶ 98-99), that argument does not move the needle. *See Brashears*, 1999 WL 93582, at *4. As stated, Tennessee law does not subscribe to a general notion of equitable tolling. *Redwing*, 363 S.W.3d at 460. "The doctrine of equitable estoppel applies only when the defendant engages in misconduct," and the doctrine "always involves allegations that the defendant misled the plaintiff." *Id.* at 460-61.

All told, Billingsley's theory boils down to "I forgot the date when I was arrested and the government did not remind me when I asked for documents about the arrest." Billingsley has not alleged "the essence of an equitable estoppel claim." *Id.* at 465. Nowhere does Billingsley allege that he "put off pursuing [his claim] because of the defendant's promises, suggestions, or inducements that filing suit would be unnecessary." *Id*. This result would be different if

Billingsley had alleged that government officials: (1) "promise[d] not to assert a statute of limitations defense"; (2) "promise[d] to pay or otherwise satisfy the plaintiff's claim without requiring the plaintiff to file suit"; or (3) "promise[d] to settle a claim without litigation following the conclusion of another proceeding between the defendant and a third party." *Id.* at 460-61. But Billingsley has not alleged that such promises were made here. And he has not alleged any "affirmative" misrepresentation. *Carpenter*, 838 S.W.2d at 528. Because "silence, non-action, or acquiescence" is not enough, Billingsley cannot equitably estop defendants from asserting their statute of limitations defense under Tennessee law. *Id.*

I respectfully dissent.